DREW, Chief Justice.
The question presented in this litigation in whether the appellant, who operates a restaurant in Jacksonville, Florida, “having accommodations for sérvice of 200 or more patrons at tables and occupying more than 4000 square feet of space,” is entitled to a liquor license regardless of the fact that the maximum number of liquor licenses which may be issued in the City of Jacksonville, Florida, pursuant to the provisions of Section, 1 of Chapter 25919, Laws of Florida, Special Acts of 1949, have already, and long since, been issued and are outstanding'.
The appellant contends that he is entitled to have such license issued to him for the reason that Chapter 25359, Laws of Florida, Acts of 1949, F.S.A. § 561.01 et seq., which was passed in the same session but subsequent to the aforesaid Chapter 25919, supra, contains the controlling provision authorizing the issuance of such a license as an exception to the limitations imposed in Chapter 25919. Appellant further argues that if any doubt exists that the Legislature intended to authorize the issuance of a liquor license to establishments such as that operated by appellant, regardless of the provisions of any local or special act, such *444 doubt is dispelled by a consideration of Chapter 28117, Laws of Florida, Acts of 1953, F.S.A. § 561.20 and note, which is the last expression of the Legislature on the subject and concerning which more will be said later.
It was the judgment of the lower court set forth in an exhaustive, decree that the statutes herein mentioned, construed . according to the precepts and rules approved by this Court, led him to the conclusion that so far as the City of Jacksonville was concerned the status of appellant was governed by Chapter 25919, supra, and that appellant was not entitled to the issuance of a license. The appeal is from that decree.
In the 1949 session of the Legislature, a local law relating wholly to the City of Jacksonville (Chapter 25919, supra, effective June 3, 1949) was adopted by the Legislature. This law provided that the number of liquor licenses to vendors in the City of Jacksonville was limited to one license for each 4,000 persons in said City but that at least 76 licenses could be issued in any event. The act contained a provision that it'should not apply to certain designated types of licenses'which were' specificálly described. Restaurants were hot mentioned in the exceptions. Parenthetically, these exceptions, outside the one relating to the larger hotels, were with reference to licenses for establishments dealt with'under th'e general beverage act such as steamships, trains, etc.
The same session of the- Legislature enacted a general revision of a substantial portion of the beverage act, which was designated Chapter 25359, supra, and which became effective June 13, 1949, ten days subsequent to the effective date of the foregoing special act. Included in this general act was a Section 7 which provided that liquor licenses (by liquor licenses we refer to hard liquor licenses) under the applicable statutes should be issued so that the number of such licenses within the limits of any incorporated city or town, or in the territory of any county lying outside of any such cities or towns, should not exceed one such license for each 2,500 residents or major fraction thereof within such city or town or within such county outside the limits thereof. The act contained a proviso that in any event any city or town in a “wet” county would be entitled to two licenses and the territory outside of any such city or town in any county to three licenses. Said Section 7 also contained the provision, “no such limitation of the number of licenses as herein provided shall be applicable to * * * restaurant[s] * * * having accommodations for service of two hundred or more patrons at tables and occupying more than four thousand square feet of space * * *.” F.S.A. § 561.20. This Section also contained the following paragraph which is the real nub of this controversy: “The limitations herein prescribed shall be cumulative to and shall not affect or repeal any existing or future local or special act relating to the limitation by population of such licenses within any incorporated city or town or county that may be in conflict herewith.” (Italics and emphasis added.)
In the consideration of Chapter 25359, supra, in the determination of the instant problem, we observe that said Section 7 was amended by Chapter 28117,. supra,, in 1953, primarily, it would seem, for the purpose of restricting further the exception in the 1949 act so far as it concerned restaurants having accommodations for service of 200 or more patrons and more than 4,000 square feet of space by further requiring that these excepted restaurants also be restaurants “containing all necessary equipment and supplies for, and serving full course meals regularly.” This act also contained the usual provision that all laws in conflict with it are repealed, “provided that nothing in this act shall be. construed to affect or cancel any license heretofore issued pursuant to any special or local law.”
The myriad rules which have been designed by courts for the purpose of construing legislative acts were designed for the purpose of ascertaining, in doubtful cases, the legislative intent because of the law is what the lawmaking body intended it to be. Words are the means of expressing that intention, making a permanent monu *445 ment of it and are, when clear, the best evidence of what the law is. The search in cases of this kind is to ascertain this intent. Because of the complexities and limitations of language and the difficulty ofttimes experienced in expressing thoughts in printed words, the problems of statutory construction are often difficult. In doubtful cases we must, among other things turn to the language used, the general policy of the law on the subject, the objects which’the Legislature had in mind in the enactment of the legislation, the purposes sought to be accomplished by such legislation, and the nature of the subject being legislated upon, in order to determine as near as we can just what the Legislature intended the law to be. We are entitled to, and should, ascribe to the acts of the members of the lawmaking body a purpose to serve the best interest of the people and the general welfare of the State. See 50 Am.Jur. “Statutes” 279, Sec. 298.
Chapter 25919, supra, (the local law) contained a clear limitation of one license for each 4,000 residents but, in any event, 76 licenses for such city. The act provided' that, in, determining the number of such licenses certain types of licenses should not be considered in calculating the number authorized. Restaurants were not included in the description. During this same session of the Legislature it had under consideration Chapter 25359, supra, (the General Law) which was a general revision of a substantial portion of the beverage act with particular emphasis on licenses and the various aspects thereof. So it is — and this much we know — both the Jacksonville situation and the situation regarding the State at large were being considered by the Legislature at the same time. A few days after the Jacksonville act was passed, Chapter 25359, supra, became a law. It contained the provisions which we have described above. This general law limited the number of liquor licenses to one in 2,500 population but contained a specific provision with reference to the large hotels and large restaurants of the type specifically noted herein. This act also contained the provision which we have quoted at length above with reference to being cumulative to and not designed to affect or repeal local or special acts. We think the decision in this case turns primarily upon this italicized language that we have quoted. We hold that it was the intention of the Legislature, in inserting this paragraph in Chapter 25359, to preserve the effect of any existing or future local or special act so far as it related to the limitation by population of liquor licenses within its territory. That, in fact, is exactly what it says. The exceptions (those licenses issued to designated establishments under the exceptions in the act) were matters to be and were governed by the general law.
■ We think these two 1949 acts may be construed together and effect be given to both. This can be accomplished by construing the quoted provision as leaving for local determination the number of licenses on a population basis, but leaving in the General Law the exceptions noted.,
To put it another way, the Legislature recognized the propriety and reasonableness of allowing cities and towns, through their representatives in the Legislature, to determine the number of liquor licenses.in such communities according to population on such reasonable basis as might be in the interest of said cities or towns.. But it withheld for general application throughout, the State certain specific types , of licenses from the operation of such limitations. This . is a logical and reasonable result. It is the large number of bars and package stores and the attendant police problems arising therefrom as well as the moral and social issues involved that furnish the basis of legislation limiting the number of such establishments. These limitations are directed to the type of establishments exclusively or primarily engaged in the sale of hard liquors. The exceptions mentioned deal exclusively with those types of establishments where the sale of liquor is an incident to the main business and where obviously the police problems are not the same nor the moral or social issues similar. Even the exceptions in the Local Act are of this kind.
Moreover, the type of hotels and restaurants excluded from the operation of the *446 limitation by population provision are ones -that would be logically considered by the Legislature, in the interest of the general welfare of the State, to require such licenses for the purpose of effective operation, the payment of their tax obligations and the promotion of the general good. Florida is ■one of the more rapidly developing states, if not actually the leader in this field. It is •only natural that the Legislature would 'have great regard for large enterprises of -this kind. Such are necessary in the great and profitable tourist trade. It would not likely want to leave to local governments the right to determine whether institutions of ■this kind would be granted licenses which -are so essential to their successful operation and without which they would probably not 'be built or operated. That the State is interested in • enterprises of this kind is ■evident from the passage in recent years of :many acts granting tax exemptions and other inducements to new enterprises. No-tably among these of recent years was the ■ act of the 1953 Legislature granting" tax • concessions to certain large insurance organizations. Chapter 27989, Laws of Florida, Acts of 1953, F.S.A. § 205.432 and note. iEven our Constitution contains many provisions of this nature. See notably Sections 12 and 14 of Article IX of the Florida Constitution, F.S.A. Moreover, the passage of' -the 1953 Amendment (Chapter 28117, supra) above' alluded to is a clear expression at' least that the Legislature intended that large '.hotels and restaurants of the type déscribed in the act should receive uniform considera•tion throughout the length and breadth of ■the State.
We think the construction we have given this act is what the Legislature rflean't to -accomplish and that is what the law is. It fits precisely into the historic legislative ■pattern of encouraging new enterprises in this fast growing State. It is recognized •that, “in interpreting an ambiguous statute the courts may among other matters take into consideration the general policy of the-'law, or the settled policy of the state, in so far as it may throw light on the legislative intention, and that a statute should be interpreted in the light of, and to effectuate, such policy, where it is clearly deducible from consistent acts of the Legislature, or where the statute is a part of other legislation designed as a whole to establish an expressed state policy.” 50 Am.Jur. 280, Sec. 299.
The decree of the lower court must be reversed with directions to enter one in accordance with the views herein expressed.
Reversed.
TERRELL, THOMAS, HOBSON, and ROBERTS, JJ., concur.
SEBRING, J., dissents.
THORNAL, J., not participating.