119 So.2d 704 (1960)
Cynthia E. DAVIDSON, Doing Business As Barcelona Gardens Restaurant, Appellant,
v.
CITY OF CORAL GABLES, Florida, a Municipal Corporation, Appellee.
No. 59-111.
District Court of Appeal of Florida. Third District.
March 31, 1960.
Rehearing Denied May 4, 1960.
*705 Okell, Rutherford & Okell, Miami, for appellant.
Edward L. Semple, Miami, for appellee.
PER CURIAM.
The chancellor sustained a motion to dismiss appellant's second amended complaint whereby she sought a declaratory decree regarding her right to obtain a liquor license in Coral Gables.
The appellant Davidson owned a restaurant in the City of Coral Gables. The amended complaint reveals that there were accommodations to serve 200 or more patrons, that the restaurant contained more than 4,000 square feet of space, that it contained all necessary equipment to serve its patrons, and in other respects met the requirements of Section 561.20(2), Florida Statutes 1955, F.S.A. On July 3, 1957, appellant applied to the State Beverage Department for a license authorizing the sale of intoxicating beverages for consumption on the premises of her restaurant. On September 3, 1957, her application was denied by the Beverage Department on the ground that "the location does not conform to zoning ordinance No. 720, amended by zoning ordinance No. 1014 of Coral Gables." The complaint also alleges that during *706 May of 1957, appellant had applied to the City of Coral Gables for a municipal license to operate the business but was advised that "the quota" for liquor licenses in Coral Gables was filled at that time.
The type of license sought by the appellant as defined by City Ordinance No. 720, is described as a "retail liquor store" which is a "vendor of alcoholic beverages and intoxicating liquors at retail for consumption on the premises." By City Ordinance No. 1014, Section 13(d) it is provided that the business of a retail liquor store "shall not be conducted upon or from any premises in Coral Gables, except when the license therefor is issued to a hotel having one hundred or more guest rooms, and in such case, such license may be issued for any premises where operation of such hotel is permitted under the zoning ordinances of the City."
The respondent city claims the authority to adopt the quoted ordinances under Section 7ee, Chapter 13972, Special Laws of Florida 1929, which is the City Charter. This section provides in part that the city shall have the power "to prohibit and/or regulate by ordinance the sale, manufacture, transportation or possession of intoxicating liquors, wines and beers within the limits of the City." In denying the appellant's application the city further relies upon Chapter 24446, Special Laws of Florida, 1947, which limits the number of places selling intoxicating beverages to "one license for each three thousand persons in said city, according to the last state or federal census * * *." The statute last cited further provides, however, "that the City Commission of the City of Coral Gables may, without regard to the limitation fixed herein, issue such license to hotels having one hundred or more guest rooms, and licenses issued to such hotels shall not be taken into consideration in computing the number of licenses permissible on the basis of population * * *."
The Chancellor sustained a motion to dismiss the amended complaint with prejudice by holding that the license requested by Appellant Davidson was properly denied under ordinances Nos. 720 and 1014, supra, which in the view of the Chancellor, were properly enacted pursuant to Chapter 13972, Special Laws of Florida 1929, as amended.
Appellant Davidson asks us to reverse the Chancellor because in her view Section 561.20(2, 4), Florida Statutes 1955, F.S.A., set up a special class of restaurant licenses which under the general Beverage Law then in effect could not be included within municipal population quota limitations, the City Charter provisions notwithstanding.
The appellee city contends that the Charter authorizes the municipality to regulate the sale of intoxicating beverages, that the 1947 Charter Act authorizes restriction of the number of licenses on the basis of population and that these local acts should supersede any general law on the subject when applied to the local situation.
We are immediately confronted by the decision of the Supreme Court of Florida in Abood v. City of Jacksonville, Fla. 1955, 80 So.2d 443. It was there held that a 1949 special act applicable to the City of Jacksonville, for all practical purposes identical with the 1947 Coral Gables Act, supra, would not supersede the provisions of Section 561.20(2, 4), Florida Statutes 1953, F.S.A., which authorized so-called special licenses in restaurants of certain sizes. See Chapter 25359, Laws of 1949. In the Abood case the Florida Supreme Court took note of the fact that the Jacksonville Special Act (as does the 1947 Coral Gables Special Act) made provision for special hotel licenses but did not include the special type of restaurant license as an exception to the population quota. It was the view of the majority of the Supreme Court that under the then prevailing provisions of Section 561.20(2) and (4), Florida Statutes 1953, F.S.A., liquor licenses could properly be limited on a population quota basis within a municipality except as to *707 those special types of licenses such as these restaurant licenses which under the general act were reserved for general state-wide regulation.
However, the decision in the Abood case is not applicable or controlling here. This is so because subsequent to the filing of the present suit, but before the entry of the final decree the legislature amended § 561.20(4), Fla. Stat., F.S.A., so that the exception under the state law to its limitations, which authorizes additional licenses to restaurants meeting certain requirements, will no longer prevail over limitation regulations of a city made pursuant to its charter which are in conflict therewith. That change in the state law, made during the pendency of this suit, activated or reactivated the limitations under the city's charter by which issuance of a restaurant liquor license on the basis applied for was interdicted.
At the time the Abood case was decided, and when the present application was made and the suit for declaratory decree was filed, subsection 4 of § 561.20 of the Beverage Law (Chapter 561, Fla. Stat., F.S.A.,), read as follows:
"The limitations herein prescribed shall be cumulative to and shall not affect or repeal any existing or future local or special act relating to the limitation by population of such licenses within any incorporated city or town or county that may be in conflict herewith."
It was under this provision that the Florida Supreme Court in the Abood case, supra, held that the special restaurant type of license could not be included within municipal population quota limitations under local charter provisions. This provision of the law was amended by § 2 of Chapter 57-773, Laws of Florida, 1957, to read as follows:
"The limitations herein prescribed shall not affect or repeal any existing or future local or special act relating to the limitation by population and exceptions or exemptions from such limitation by population of such licenses within any incorporated city or town or county that may be in conflict herewith."
The effective date of that amendment was January 1, 1958. This was expressly provided for by § 3 of Chapter 57-773 as amended and clarified by § 1 of Chapter 57-1991, Laws of Florida, Extra.Sess. 1957, now appearing as subsection 4A of § 561.20, Fla. Stat., F.S.A., as follows:
"Provisions of subsections (2) and (4) as amended by ch. 57-773, shall take effect January 1, 1958, and shall apply only to those places of business licensed to operate after January 1, 1958, and shall in no manner repeal or nullify any license issued under provisions of law which are now operating or will operate prior to the effective date January 1, 1958, and all such places of business shall be exempt from the provisions of this law so long as they are in continuous operation."
The record discloses that this suit was commenced on September 19, 1957. The final decree which dismissed the cause was entered on July 11, 1958. Thus the change in the law above referred to occurred during the pendency of the suit, and was in effect at the time of the rendition of the final decree. We will refer to § 561.20(4) as it read at the time of the commencement of the suit as the earlier law, and to the section as amended, effective January 1, 1958, as the present law.
The earlier law stated that the limitations (and that would include exceptions to limitations) which the Beverage Law prescribed were cumulative and did not affect existing population limitations, imposed by cities, which might be in conflict therewith. It is important to note that the earlier law did not state, as does the present law, that the limitations therein shall not affect or repeal "exceptions or exemptions from such limitations by population" by cities *708 under their charters which are in conflict therewith. Thus in the Abood case, a limitation exception provided in the state law, allowing licenses in restaurants meeting certain requirements, was held to prevail over a city's limitations which did not make such an exception.
The present law presents a different situation. First, the word cumulative, which had appeared in the earlier law, was left out, and, more important, where the earlier law had said that the state regulations would not affect or repeal city limitations imposed by population, this amendment added that a city's regulations as to exceptions and exemptions to population limitations were not thereby affected or repealed.
The determinative question in the case narrows down to one of whether the controlling law was that which prevailed when the suit was filed, or that which prevailed at the time of the decree. Thus, if there is applied to this case the state law in its earlier form, as it stood when the Abood case was decided, and when this suit was begun, then we would be required to hold, as was held in the Abood case with reference to a similar situation in the City of Jacksonville, that the restaurant liquor license exception granted under the state law was cumulative to the regulations of the City of Coral Gables and compelled the issuance of such a license, in spite of a city liquor regulatory ordinance duly sponsored by its charter, which otherwise would prohibit it. But if the present state law, as it was changed by the legislature pending the suit and as it stood at the time of the final decree is controlling, then we must affirm the decree in this suit, because under the state law as amended prior to the decree the state's restaurant liquor license exception is not made cumulative, and under that law it is stated expressly that its limitations shall not "affect or repeal" local or special acts relating to limitations by population (as had the earlier law) but also shall not affect or repeal those relating to "exceptions or exemptions from such limitation by population of such licenses within any incorporated city or town or county that may be in conflict herewith."
The applicable authorities show it to be the general rule that in a suit involving an application for issuance of a liquor license, the law as it stands at the time of the decree, rather than at the time of application or the filing of the suit, controls the decision thereon. A statement of that rule should not omit reference to an established exception. The exception is that when the officials or governmental body to whom an application for a liquor license has been made, and against whom suit is filed to enforce its issuance, act arbitrarily to avoid their duty, such as by undue delay during which a further effective limitation is enacted, or by passing new limitations or regulations designed to avoid having to issue the license and to circumvent an impending court decision which would direct its issuance, the court may disregard the new restriction or regulation thus enacted by the officials or governmental agency which is involved in the suit, or which has been passed after their undue delay. See Aiken v. E.B. Davis, Inc., 106 Fla. 675, 143 So. 658; Harris v. State ex rel. Wester, 159 Fla. 195, 31 So.2d 264; Broach v. Young, Fla. 1958, 100 So.2d 411. In the cases cited the circumstances were such as to justify the court in viewing the action of the governing authority in changing the law as having been done with reference to the pending license application, and as attempting to create a judicial decree by the exercise of legislative power to circumvent an impending adverse court decision.
In such cases it is a question for the court as to whether the subsequently enacted limitations or regulations were made arbitrarily or in bad faith. When not so classified, new limitations or regulations, even when they are enacted during the pendency of the suit by the officials or governing authority involved in the suit, and are such as would prevent issuance of the license or permit which otherwise should be issued, will be given effect by the court and *709 applied as being the determinative law at the time of decision. See City of Miami Beach v. Prevatt, Fla. 1957, 97 So.2d 473, 477; Schreiber v. Illinois Liquor Control Commission, 12 Ill.2d 118, 145 N.E.2d 50; Tanner v. Illinois Liquor Control Commission, 16 Ill.2d 517, 158 N.E.2d 636; Annotation 169 A.L.R. 584 (1947). The question of good faith ordinarily does not arise when the change in the law is by an act of the state legislature. Here the change was in the form of an amendment to the Florida Beverage Law, having state-wide effect, and there was no showing that it was enacted vis-a-vis the Davidson liquor license application then pending in the City of Coral Gables.
But the appellant contends that a denial of the application on the basis of the amendment to the Beverage Law would be giving to the new law a retroactive effect. Such is not the case. The law as amended shows on its face that it was intended to act prospectively and not retroactively, in that it was made to apply only to licenses issued after its effective date. See Shearer v. Spadie, Ky. 1953, 260 S.W.2d 648, 650. The appellant's license had not been issued prior to the effective date of the amendment.
The appellant's contention that the amendment to the state law could not be given a retroactive effect to preclude granting of the appellant's previously filed application for the liquor license, necessarily assumes that her application for such license represented a vested interest. The law is to the contrary. Although a liquor license "has come to have the quality of property, with an actual pecuniary value" it is "a mere privilege insofar as governmental regulations of the alcoholic beverage industry is concerned" (House v. Cotton, Fla. 1951, 52 So.2d 340, 341), and while the liquor business is a legitimate business protected by law as are other businesses (Harris v. State ex rel. Wester, supra, 159 Fla. 195, 31 So.2d 264, 266), such a license is not a vested right, and it can be subjected to further regulation or even revocation, at the pleasure of the legislature. See State ex rel. First Presbyterian Church of Miami v. Fuller, 133 Fla. 554, 182 So. 888, 890; Id., 136 Fla. 788, 187 So. 148, 150; Leafer v. State, Fla. 1958, 104 So.2d 350, 351. In the Leafer case the Supreme Court said (104 So.2d 350, at page 351):
"* * * This court has repeatedly held that no such right vested by virtue of a license of this kind. For instance, in State ex rel. First Presbyterian Church of Miami v. Fuller, 136 Fla. 788, 187 So. 148, 150, we said, referring to an opinion in a former appearance of the case, reported in 134 Fla. 212, 183 So. 726, `a license is not property in a constitutional sense' and since `it "confers no right or estate or vested interest it would seem to follow that it is at all times revocable at the pleasure of the authority from which it emanates."' In the earlier case this court also held that when a person enters the business of selling liquor he does so well-knowing that the legislature has the power not only to regulate but to prohibit. * * *"
Since a liquor license creates no vested interest, an application for such a license can not rise to a higher level than that of the license it could produce. It follows logically that if such a liquor license does not constitute a contract and does not create a vested interest, an application for a liquor license likewise is ineffective for either purpose, and it, as well as the license, is subject to all applicable laws and authorized limitations and regulations thereunder of the state and municipality which are or might be in force. See Schreiber v. Illinois Liquor Control Commission, supra, 12 Ill.2d 118, 145 N.E.2d 50, 53; Scharff v. State, 99 Ohio App. 139, 131 N.E.2d 844, 845, 846.
In Scharff v. State, supra, an application for a liquor license in a village in Ohio was rejected by the administrative authorities having power to issue such a license, as being contrary to certain regulations of the State Board of Liquor Control. An appeal *710 was taken contending that a regulation on the basis of which the application had been denied was not in existence when the application was made, though it became effective before the hearing and decision. In upholding the refusal to issue the license, that court said:
"It is admitted that if the various freeze orders had application during their effective dates, the permit could not have been lawfully issued, but the appellant contends that his rights to a permit were fixed as of the date of the filing of the application, to wit, on December 10, 1948. This would be true if any rights vested in the applicant when the application was filed, but such does not appear to be the law. It seems to be well established that a legal license confers no right or estate or a vested interest. 8 Ohio Jurisprudence, 525, Section 388; State ex rel. Zugravu v. O'Brien, 130 Ohio St. 23, 196 N.E. 664.
"The constitutional inhibitions as to the impairment of the obligation of a contract do not extend to licenses. 12 American Jurisprudence, 36. See, also, numerous cases cited therein.
"In State v. Gibbs, 82 Vt. 526, 74 A. 229, 24 L.R.A.,N.S., 555, 18 Ann.Cas. 525, the court held that a license to sell liquor is not a contract between the state and the licensee, giving the latter vested rights, and it cannot be so granted as to be irrevocable.
"If there can be no vested right in a permit, it must logically follow that there can be none in an application for the same; hence, the law applicable at the time of the passing on the application by the proper authorities must govern."
In the case of Schreiber v. Illinois Liquor Control Commission, supra, 12 Ill.2d 118, 145 N.E.2d 50, the Supreme Court of Illinois followed the Scharff case and a Pennsylvania case (Appeal of Spankard, 138 Pa. Super. 251, 10 A.2d 899) holding that the law or regulations at the time of decision rather than at the time of application controlled applications for such licenses.
In the Spankard case the Pennsylvania Liquor Control Board refused an application of Spankard for a restaurant liquor license in the City of Pittsburgh, on certain grounds relating to the applicant's personal qualifications. An appeal to the court was taken, pending which a new state law became effective, under which, because of certain limitations as to population provided for therein, the license sought could not be granted if such new law applied. The court dismissed the appeal on the ground that the right to the issuance of the license was controlled by the law prevailing at the time of decision and not at the time of the application, thus giving effect to the statutory change which occurred before the time the court rendered its decision.[1] In disposing of that case the Pennsylvania court said (10 A.2d at pages 901, 903):
"(1) We are of opinion that the order dismissing the appeal was the practical equivalent of an order sustaining the action of the Board refusing to issue the license; just as an order dismissing an appeal in this court amounts, in its practical effect, to an affirmance of the judgment of the court below, when there are reasons why the dismissal of the appeal is, in the circumstances *711 of the case, deemed a more appropriate judgment. In this case the court below stated that were it not for the Act of 1939 [47 P.S. §§ 744-1001 to 744-1003], supra, it would have been disposed to order the license to issue. Accordingly, it sustained the refusal of the Board to issue the license, by dismissing the appeal, but did so because of the mandatory provisions of the Act of 1939, and not for the reasons given by the Board."
* * * * * *
"Appellant's error is in treating the matter as if an applicant for a retail liquor license, by filing his application, obtained a contract or property right, which could not be taken away from him by the legislature without making compensation to him. The filing of such an application gives a person no contract or property rights at all. Fanning's License, 23 Pa.Super. 622, 628; Cochran's License, 47 Pa. Super. 376, 381. In the former case this court said: `It has been frequently said by our Supreme Court that no man has a right to a license.' In the latter, `The applicant has no absolute right to a license, although complying with the statutory requirements, but he has a right to a hearing and decision on his application.' See also Keiper's License, 21 Pa.Super, 512, 516. In Raudenbusch's Petition, 120 Pa. 328, 340, 342, 14 A. 148, 149, Mr. Justice, afterwards Chief Justice, Paxson, speaking for the Court, said: `The petitioner assumes that he is entitled, as a matter of right, to a license, upon complying with the provisions of the act of 1887, in the absence of any allegation that he is an improper person to be so licensed. This is the fallacy which underlies his case, as well as the able argument of his learned counsel. He has no such absolute right, nor has any other man in the commonwealth. * * * Neither the petitioner, nor any other person in this state, has any property in the right to sell liquor.' (Italics supplied.) Whether any license shall be granted, and what licenses shall be granted, are legislative questions (Schlaudecker v. Marshall, 72 Pa. 200, 206) and subject at all times to the control of the legislature. A liquor license, even when granted, is not a property right. It is only a privilege. Grime v. Dept. of Public Instruction, supra, 324 Pa. [371] pages 381, 384, 188 A. 337; Harris v. State Board, 287 Pa. 531, 538, 539, 135 A. 237; Blumenthal's Petition, 125 Pa. 412, 415, 18 A. 395; Buck's Estate, 185 Pa. 57, 60, 39 A. 821, 64 Am.St. Rep. 816; Mueller's Estate, 190 Pa. 601, 603, 42 A. 1021; Boston Beer Co. v. Mass., 97 U.S. 25, 33, 24 L.Ed. 989. It may be taken away by the governing authorities without compensation to the holder. * * *"
In 9 McQuillin, Municipal Corporations, § 26.94 (3d ed. 1950), it is said:
"The general rule is that the law as of the time of judicial proceedings for relief relative to licenses, permits or exactions in connection therewith governs those proceedings except with respect to rights that have vested under the law as existing prior thereto. It has been ruled that the law prevailing at the time of an appeal governs with respect to an appeal from a refusal of a permit. Just as a change in the law between a trial and an appellate decision requires the appellant court to apply the changed law, so by like token, a change of law pending an administrative hearing or act must be followed with respect to a permit for the doing of a future act; otherwise, a licensing authority whose acts are subject to appeal or review by a court, would issue a permit contrary to existing legislation. * * *"
For the reasons stated we hold that under the charter and ordinances of the City of Coral Gables in effect at the time of *712 the rendition of the final decree, a restaurant liquor license as applied for was not authorized to be issued, and that under the Beverage Law as amended at the time of the final decree the restaurant liquor license exception provided for in the state Beverage Law did not prevail over conflicting regulatory provisions of the city, and, therefore, the chancellor was eminently correct in dismissing the suit.
Affirmed.
PEARSON, Acting Chief Judge, and CARROLL, CHAS., J., concur.
THORNAL, CAMPBELL, Associate Judge, dissents.
THORNAL, CAMPBELL, Associate Judge (dissenting).
I regret that I must disagree with the views of the majority. I do so with admitted reluctance. My personal desire would be to affirm the decree of the Chancellor if I could find it in the law to do so. When appellant applied for the license and when she instituted the litigation in 1957, she was entitled to receive the license under the rule of Abood v. City of Jacksonville, Fla. 1955, 80 So.2d 443. The appellee city thereafter made no changes in its municipal ordinance. The majority sustains the decree of the Chancellor with the view that when the decree was entered Section 561.20(4), Florida Statutes, as amended, F.S.A., had become effective on January 1, 1958. Therefore, it is concluded that when the Chancellor entered his decree in July 1958, the amended statute had breathed life into the theretofore unenforceable ordinance. It seems to be the majority's view that this process of resuscitation came about automatically without any specific reference to the ordinance by the Legislature and without any further re-enactment of the ordinance by the municipality after the amendatory act took effect on January 1, 1958. I am compelled to disagree with the conclusions reached by the majority in the light of the decision of the Supreme Court of Florida in Abood v. City of Jacksonville, supra, and Harris v. State ex rel. Wester, 1947, 159 Fla. 195, 31 So.2d 264. See also 37 Am.Jur., Municipal Corporations, Section 169, page 748; McGillic v. Corby, 37 Mont. 249, 95 P. 1063, 17 L.R.A., N.S., 1263; People ex rel. Larson v. Thompson, 377 Ill. 104, 35 N.E.2d 355, 140 A.L.R. 948; State v. Owen, 242 N.C. 525, 88 S.E.2d 832. The cases last cited merely stand for the proposition that an ordinance which is void and unenforceable under a statute existing at the time of its enactment is not automatically validated by amendment of the statute which might authorize the valid re-enactment of the ordinance after the amended statute takes effect. Here even if the latest amendment of the statute authorized the ordinance, nevertheless the latter was not itself amended before the final decree was entered.
For the foregoing reasons I respectfully dissent.
NOTES
[1] Parenthetically, the Spankard case is closely in point on its facts and holding. There a 1939 statutory amendment, made while the case was pending and which controlled the outcome of that case, fixed certain limitations based on population, and provided that when these were exhausted, no new license except for hotels as defined in that act should be granted. The population quota was filled and the city's regulations did not permit a hotel liquor license as an exception, as did the state law. There a contrary regulation of the City of Pittsburgh prevailed over an exception made in the state law for restaurant liquor license.