606 So.2d 722 (1992)
STATE of Florida, DEPARTMENT OF ENVIRONMENTAL REGULATION, and City of Jacksonville, a Municipal Corporation, Appellants,
v.
SCM GLIDCO ORGANICS CORPORATION, a Delaware Corporation, Appellee.
Nos. 91-3591, 91-3670.
District Court of Appeal of Florida, First District.
October 16, 1992.
Rehearing Denied November 25, 1992.
*723 Jeanne Elias, Asst. General Counsel, Dept. of Environmental Regulation, Tallahassee, John A. Delaney, General Counsel and Gregory K. Radlinski, Asst. General Counsel, Jacksonville, for appellant.
Tim E. Sleeth and Herschel T. Vinyard, Jr. of Smith Hulsey & Busey, Jacksonville, for appellee.
ERVIN, Judge.
Appellants, the City of Jacksonville (City) and the Department of Environmental Regulation (DER), seek review of an order granting summary final judgment in favor of appellee, SCM Glidco Organics Corporation (Glidco), in connection with their complaints for civil penalties claimed for improper asbestos removal, in violation of Jacksonville Environmental Protection Board (JEPB) Rule 2.209 and Florida Administrative Code Rule 17-2.670. The trial court entered the summary final judgment based on a finding that the above rules irreconcilably conflict with Section 455.302, Florida Statutes (1989), which the court interpreted as absolutely prohibiting unlicensed persons such as Glidco from exercising control over the asbestos abatement operation. We find no such conflict and therefore reverse and remand for further proceedings.
The record discloses that Glidco hired Southeast Asbestos-Free Environments, Inc. (SAFE), a state licensed asbestos abatement contractor, in April 1989 to remove asbestos insulation from Glidco's Jacksonville facility. The asbestos removal project was concluded on October 31, 1989. Glidco did not itself remove any asbestos material during the operation.
The City filed a complaint in circuit court on October 17, 1990, seeking civil penalties in connection with the asbestos abatement project against both Glidco and SAFE for violations of JEPB rule 2.209. The City claimed that Glidco and SAFE had failed to ensure that the asbestos materials were adequately wet while being stripped and that they remained wet until they were collected, contrary to JEPB rule 2.209.
Glidco answered the complaint, generally denying the allegations and asserting affirmative defenses. The fourth affirmative defense, which is pertinent to this appeal, stated:
Section 455.302, Fla. Stat., prohibits a person or entity, such as Glidco, that is not a state licensed asbestos contractor from conducting asbestos abatement work. JEPB Rule 2.209 purports to require an owner of a facility to comply with certain work practice standards during asbestos removal. The requirements of JEPB Rule 2.209, if applied to Glidco, are in direct and irreconcilable conflict with § 455.203, Fla. Stat., and therefore, JEPB Rule 2.209 is preempted and unenforceable as to Glidco.
Glidco subsequently filed a motion for summary judgment based upon the above affirmative defense. The trial court agreed with Glidco that a conflict existed between the statute and JEPB rule 2.209, rendering the rule unenforceable as to Glidco, and entered an order on February 25, 1991, granting Glidco's motion.
Thereafter DER intervened and filed a complaint against Glidco and SAFE alleging violations of 40 C.F.R. § 61.147, Florida Administrative Code Rule 17-2.670, Section 403.161(1), Florida Statutes, and JEPB rule 2.209, caused by their failure to wet adequately asbestos materials during stripping and to keep such material wet until it was removed. DER sought civil penalties pursuant to rule 17-2.670 and JEPB rule 2.209.
Glidco answered, generally denying the allegations, and asserting affirmative defenses, including the defense that Florida Administrative Code Rule 17-2.670, which was virtually identical to JEPB rule 2.209, conflicted with section 455.302 and was therefore preempted by the statute and unenforceable against Glidco. Glidco then filed a motion for summary judgment based on the above affirmative defense. The court once again agreed with Glidco and entered the summary final judgment on October 15, 1991, granting Glidco's motion as to DER's action, and directing that *724 DER and the City take nothing from their complaints. Hence these appeals.
We cannot agree with the trial court that a conflict exists between either rule 17.2-670 or JEPB rule 2.209 and section 455.302. Before addressing this conflict issue, however, some background as to the above rules is necessary. Both are based on the federal Clean Air Act,[1] which was enacted "to protect and enhance the quality of the Nation's air resources." 42 U.S.C.A. § 7401(b)(1) (West. 1983). Pursuant to section 112(b) of the Act, 42 U.S.C.A. § 7412(b) (West. 1983), the Environmental Protection Agency (EPA) is required to publish a list of air pollutants that are hazardous and prescribe an emission standard for each air pollutant. These emission standards are known as the National Emission Standards of Hazardous Air Pollutants (NESHAP). The EPA designated asbestos as a hazardous air pollutant in 1971. Because no level of asbestos emission has been deemed safe, emission standards were not promulgated, rather the EPA developed "work practice" standards to protect the public health. These work practice standards are treated as emission standards. United States v. Hugo Key & Son, Inc., 731 F. Supp. 1135, 1140 (D.R.I. 1989). The asbestos NESHAP was codified at 40 C.F.R. Part 61, Subpart M. Id.; United States v. Ben's Truck & Equip., Inc., 25 E.R.C. 1295, 17 Envtl.L.Rep. 20,777, 1986 WL 15402 (E.D.Cal. 1986).
Section 61.147, which provides the procedures for asbestos emissions during demolition and renovation, provides:

Each owner or operator to whom this section applies shall comply with the following procedures to prevent emissions of particulate asbestos material to the outside air:
* * * * * *
(b) When a facility component covered or coated with friable asbestos[2] materials is being taken out of the facility as units or in sections:
(1) Adequately wet any friable asbestos materials exposed during cutting or disjointing operations; and
(2) Carefully lower the units or sections to ground level, not dropping them or throwing them.
(c) Adequately wet friable asbestos materials when they are being stripped from facility components before the members are removed from the facility....
(Emphasis added.) The term "owner or operator" is defined as "any person who owns, leases, operates, controls, or supervises a stationary source." 40 C.F.R. § 61.02. "`Stationary source' means any building, structure, facility, or installation which emits or may emit any air pollutant which has been designated as hazardous by the Administrator [of the EPA]." Id.
Pursuant to Section 403.061, Florida Statutes, which authorizes DER to adopt rules and regulations that are consistent with federal law to control and manage discharge of air pollutants, DER adopted Florida Administrative Code Rule 17-2.670, which provides:
(1) Definitions and Abbreviations
For purposes of Section 17-2.670, the definitions contained in 40 C.F.R. 61.01 [now 61.02] ... are adopted by reference... .
(2) Applicability
(a) The requirements of this Section are applicable to all of the sources of hazardous air pollutants which contain an affected facility.
(b) The National Emission Standards for Hazardous Air Pollutants contained in 40 CFR Part 61 and listed in Table 670-1 are adopted by reference... .
Table 670-1 indicates that the NESHAP for asbestos in subpart M were adopted.
Pursuant to Section 403.182, Florida Statutes, which authorizes municipalities to adopt local ordinances and rules to regulate the discharge of pollutants, the City adopted JEPB Rule 2.209, providing:

*725 (a) Section 17-2.670 FAC, as amended on July 9, 1985, is adopted and incorporated in this rule by reference as the City's standards for hazardous air pollutants, except that 40 CFR Part 61, Subpart M, Asbestos, is amended as follows:
* * * * * *
(5) Subsections 61.147 CFR through 61.155  no change.
It is apparent, and no party disputes, that the City's local rule and DER's administrative rule are substantially similar to the federal rule. As a general rule, when a Florida statute or rule is modeled after a federal law on the same subject, the Florida statute or rule will take on the same construction as its federal prototype, insofar as such construction is harmonious with the spirit and policy of the Florida law. Department of Professional Reg., Div. of Real Estate v. Toledo Realty, Inc., 549 So.2d 715, 717 (Fla. 1st DCA 1989); Pasco County Sch. Bd. v. Florida Pub. Employees Relations Comm'n, 353 So.2d 108, 116 (Fla. 1st DCA 1977).
Federal courts have interpreted the asbestos NESHAP as imposing strict liability on violators, including owners of the buildings, such as Glidco. For example, in United States v. Geppert Bros., Inc., 638 F. Supp. 996 (E.D.Pa. 1986), the EPA brought a civil action for violations of the Clean Air Act resulting from a demolition of two buildings against Geppert Bros., the contractor, and Amstar Corporation, the owner of the buildings. Amstar raised as an affirmative defense that it could not be liable for the violations as an "owner or operator of a demolition operation," because it had contracted with Geppert to do the demolition work. The court struck Amstar's affirmative defense, concluding that the regulations were intended to apply to both the owner of the building being demolished and the operator of the demolition project. Id. at 999. The court reasoned that by purchasing the services of the demolition contractor, the owner acquired ownership and control of the demolition operation, and, therefore, was an "owner" within the meaning of the regulations. Id.[3]See also United States v. Tzavah Urban Renewal Corp., 696 F. Supp. 1013 (D.N.J. 1988) (EPA obtained injunction to abate renovation of building containing asbestos against owners of building for Clean Air Act violations; imposing strict liability for NESHAP violations on owner is consistent with law involving ultrahazardous activity). And see United States v. Ben's Truck & Equip., Inc., 25 E.R.C. 1295, 17 Envtl.L.Rep. 20,777, 1986 WL 15402 (E.D.Cal. 1986) (in action where EPA sought civil penalties against the owner and the contractor for violations in an asbestos demolition project, EPA entered into consent decree with owner).
Because rules 17-2.670 and 2.209 are modeled after the federal rules and regulations regarding asbestos, if the above interpretations are found to be consistent with the spirit and policy of Florida law, then the order granting summary judgment in favor of Glidco should be reversed, thereby allowing the imposition of strict liability for any rule violations against Glidco, as owner of the facility. While it is apparent that the federal law is consistent with rules 17-2.670 and 2.209, the question remains as to whether the enactment of Section 455.302, Florida Statutes, renders the federal interpretation inconsistent with the spirit and policy behind Florida law.
In determining conflict, the polestar by which the court must be guided is the legislative intent. State v. Webb, 398 So.2d 820, 824 (Fla. 1981); State ex rel. Florida Jai Alai, Inc. v. State Racing Comm'n, 112 So.2d 825, 828 (Fla. 1959). To determine legislative intent, the court must consider the act as a whole  the evil to be corrected, the language of the act, including its title, the history of its enactment, and the state of the law already in existence. Webb, 398 So.2d at 824. Staff analyses of legislation should be accorded significant respect in determining legislative intent. Ellsworth v. Insurance Co. of N. *726 Am., 508 So.2d 395, 401 n. 3 (Fla. 1st DCA 1987).
JEPB rule 2.209 and rule 17-2.670, as set forth above, were created for the intended purpose of controlling and prohibiting pollution. §§ 403.061 & 403.182, Fla. Stat. (1989).
Section 455.302, on the other hand, is a licensing statute. It provides, in pertinent part, as follows:
(1) No person shall conduct an asbestos survey, develop an operation and maintenance plan, or monitor and evaluate asbestos abatement unless licensed under ss. 455.301-455.309 as an asbestos consultant or unless such person is working under the direction of an asbestos consultant and has been trained as provided in ss. 455.301-455.309.
(2) No person shall prepare abatement specifications unless licensed under ss. 455.301-455.309 as an asbestos consultant... .
(3) No person shall conduct abatement work unless:
(a) He is licensed as an asbestos contractor;
(b) He is an employee of a licensed asbestos contractor; or
(c) He is:
1. An employee of any state or local governmental agency, public or private school, or private entity who has been trained as provided in s. 455.308(2);
2. Supervised by an employee who has met the training requirements of s. 455.308(1); and
3. Conducting such abatement work solely for the purposes of maintenance within the confines of his employment, and such maintenance is considered to be of a small-scale short duration... . or
(d) He is a certified roofing contractor who is undertaking the removal of asbestos-containing bituminous resinous roofing materials or systems under the direction of an on site supervisor... .
(Emphasis added.)
The court below concluded that the essence of section 455.302 is "that a person who is not trained and experienced as required by Florida Statutes, and who is not licensed and regulated by the Florida Department of Professional Regulation, is absolutely prohibited from conducting asbestos removal work or monitoring or evaluating an asbestos removal project." The court further found that "[b]y specifically prohibiting Glidco from exercising control over the asbestos abatement operation, the Florida legislature has precluded Glidco from taking any meaningful action to ensure compliance by SAFE with the State Rule and created as to Glidco an irreconcilable conflict between the prohibitions in § 455.302, Florida Statutes." Thus, the court concluded that a direct conflict existed between the state and local rules and section 455.302, with the result that the statute preempted the rules, making them unenforceable as to Glidco.
In regulatory cases, "`the test of conflict is whether one must violate one provision in order to comply with the other.'" Laborers' Int'l Union of N. Am., Local 478 v. Burroughs, 541 So.2d 1160, 1161 (Fla. 1989) (quoting Laborers' Int'l Union of N. Am., Local 478 v. Burroughs, 522 So.2d 852, 856 (Fla. 3d DCA 1987)). In other words, a conflict exists when two legislative enactments cannot coexist. Id.
The state and local rules at issue here impose strict liability for rule violations upon "owners or operators" of buildings that may emit asbestos pollution. Section 455.302, on the other hand, merely requires that if a person undertakes to remove asbestos, he or she must be licensed or must use a licensed asbestos contractor or consultant. While prohibiting an unlicensed entity from doing asbestos abatement, section 455.302 does not prohibit Glidco from obtaining a license and doing the work itself. Thus, we fail to see the conflict between the rules and this licensing statute, or, in other words, how Glidco is required to violate the statute in order to comply with the rules.
The above interpretation is supported by consideration of the entire bill that created section 455.302, Chapter 87-394, Laws of Florida. This bill related to asbestos and authorized the creation of an "asbestos *727 management program" to maintain centralized records and supervise asbestos abatement work performed in public buildings under Chapter 255, Florida Statutes ("Public Property and Publicly Owned Buildings"). § 255.552, Fla. Stat. (1987). The program requires each state agency to survey for asbestos in each public building, which survey was to be conducted by a asbestos consultant licensed pursuant to sections 455.301 through .309. § 255.553, Fla. Stat. (1987). State agencies are required to initiate operation and maintenance plans via a contract between the agency and the asbestos consultant for cleanup. § 255.557, Fla. Stat. (1987). The bill allows state agencies to agree to hold harmless and indemnify an asbestos consultant under contract with it for civil damages to third parties resulting from the asbestos abatement, and to verify that the asbestos contractor had insurance. §§ 255.559 & .56, Fla. Stat. (1987). The regional asbestos program manager for the area is required to oversee and inspect the abatement work periodically. § 255.552, Fla. Stat. (1987). An Asbestos Oversight Program Team was created and made responsible for asbestos policy development, regulatory review, asbestos training course approval, and coordination of regional asbestos projects. § 255.565, Fla. Stat. (1987).
In addition, the bill also enacted sections 455.301 through.308 under Chapter 455, Florida Statutes ("Regulation by Department of Professional Regulation"). Section 455.302, as previously stated, requires all those who conduct an asbestos survey, develop an operation and maintenance plan, prepare abatement specifications, or conduct abatement work to be licensed or trained employees. Licensing requirements and fees are established under sections 455.303 through .305 and .308, and causes for license revocation or suspension are outlined in section 455.306.
The Final Staff Analysis & Economic Impact Statement of the House of Representatives Committee on Governmental Operations for House Bill No. 1473 dated June 15, 1988 (Florida State Archives), which addresses the 1988 amendments to section 455.302, including the addition to the licensing requirement for those who "monitor and evaluate asbestos abatement," indicates that the legislature adopted the asbestos abatement program in 1987 to conform to the requirements of the Asbestos Hazard Emergency Response Act of 1986 (AHERA).[4] However, subsequent EPA rules, particularly the minimum standards for state accreditation programs, were not adopted until after the effective date of the 1987 legislation, therefore, the Asbestos Oversight Program Team requested an amendment in 1988 to ensure consistency with AHERA.
To summarize, the legislative acts creating and amending section 455.302 focused on safely eradicating the dangers posed by asbestos in public buildings. There is no mention of exclusion for property owners from liability arising from the emission of asbestos pollution. In fact, section 255.559 infers just the opposite by allowing the state agency to enter into contracts with an asbestos contractor to hold the contractor harmless for "any civil damages to third parties." Moreover, because the EPA's asbestos NESHAP, upon which the state and local rules are based, and the federal AHERA, upon which section 455.302 was promulgated, coexisted under federal law, and because federal case law allowed for the imposition of strict liability against property owners for violations of the asbestos NESHAP, a similar result may occur in Florida. Thus, we conclude that no conflict between the rules and section 455.302 exists which precludes application of the federal case law interpretations to state and local rules, which would result in imposition of strict liability on Glidco, as owner of the facility, for any violations of those *728 rules. Laborers Int'l Union of N. Am., Local 478 v. Burroughs, 541 So.2d 1160 (Fla. 1989) (county employment discrimination ordinance did not conflict with Florida Human Rights Act); Abood v. City of Jacksonville, 80 So.2d 443 (Fla. 1955) (local law and general law did not conflict as to liquor license applicant); Department of Professional Reg., Div. of Real Estate v. Toledo Realty, Inc., 549 So.2d 715 (Fla. 1st DCA 1989) (construing Florida's Equal Access to Justice Act in same manner as its federal counterpart); Pasco County Sch. Bd. v. Florida Pub. Employees Relations Comm'n, 353 So.2d 108 (Fla. 1st DCA 1978) (looking to National Labor Relations Act to interpret Florida's Public Employees Relations Act).
Because strict liability may be imposed on Glidco, as the owner of the building from which the asbestos was removed, for violations of rule 17-2.670 and JEPB rule 2.209, based on a similar construction of the rules' federal counterparts, it is unnecessary to consider appellants' argument that Glidco could be liable by applying the "ultrahazardous activity theory." Additionally, because of our disposition, we need not address Glidco's argument that it must have control over the asbestos abatement project to be liable. Geppert Bros. clearly found that a property owner, by virtue of owning the facility and hiring the asbestos contractor, satisfied the definition of "owner or operator." We also decline to address DER's argument that the savings clause set out in section 455.302(4)(a) requires compliance with both the federal rule and the state and local rules.
As for any asserted due process violation caused by the imposition of strict liability against Glidco, as an unlicensed facility owner, we see none. The state and local rules regarding asbestos abatement work practices existed for several years prior to Glidco's commencement of its abatement operations, therefore we cannot conclude that Glidco was not on notice of the rules. As for the rules themselves, they must be upheld if they are reasonably related to the purpose of the enabling legislation and are not arbitrary and capricious. Department of Professional Reg., Bd. of Med. Examiners v. Durrani, 455 So.2d 515, 517 (Fla. 1st DCA 1984). As previously stated, both rules were promulgated for the purposes of controlling and prohibiting pollution. § 403.061 & 403.182, Fla. Stat. (1989). Establishing work practices identical to those promulgated by the federal government for the removal of asbestos, a hazardous air pollutant, clearly acts to control and prohibit air pollution and cannot be considered unreasonable, arbitrary, or capricious.
In conclusion, because we do not find a conflict between Jacksonville Environmental Protection Board Rule 2.209 or Florida Administrative Code Rule 17-2.670 and Section 455.302, Florida Statutes, the order granting summary judgment to Glidco is REVERSED and the case REMANDED for further consistent proceedings.
MINER and WOLF, JJ., concur.
NOTES
[1] 42 U.S.C.A. §§ 7401-7642 (West. 1983).
[2] "Friable asbestos material means any material containing more than 1 percent asbestos by weight that hand pressure can crumble, pulverize, or reduce to powder when dry." 40 C.F.R. § 61.141.
[3] As pointed out by appellee, on November 19, 1990, the EPA amended the "owner or operator" definition to expressly include the facility owner.
[4] 15 U.S.C.A. §§ 2641-71 (West.Supp. 1992). This act was created for the purpose of providing for the establishment of federal regulations for inspection for asbestos-containing material and implementation of appropriate response actions in the nation's schools and to require the EPA Administrator to conduct a study to find out the extent of danger posed by asbestos in public and commercial buildings. 15 U.S.C.A. § 2641(b) (West.Supp. 1992).