Dear Mr. Pritt:
On behalf of the Naples City Council, you ask substantially the following questions:
1) May the Naples City Council, by ordinance, amend the Naples City Charter to change the date of the regular municipal election date from the first Tuesday in February of each even numbered year to a date that corresponds with the State of Florida Presidential Primary every four (4) years?
2) May the Naples City Council, by ordinance, amend the Naples City Charter to provide for a special candidate qualification date in years in which there is a State of Florida Presidential Preference Primary?
As your questions are interrelated, they will be answered together.
You note that during the 2007 Regular Session, the Legislature enacted Chapter 07-30, Laws of Florida. Section 4 of the act added subsection (3) to section 101.75, Florida Statutes, to provide:
"Notwithstanding any provision of local law, for any municipality whose election is scheduled to be held in March 2008, the governing body of the municipality, notwithstanding any municipal charter provision, may, by ordinance, move the date of the general municipal election in 2008 and in each subsequent year that is a multiple of 4 to the date concurrent with the presidential preference primary. The dates for qualifying for the general municipal election moved by the passage of such an ordinance shall be specifically provided for in the ordinance and shall run for no less than 14 days. The term of office for any elected municipal official shall commence as provided by the relevant municipal charter or ordinance, and the term of office for any elected municipal official whose term was due to expire in March 2008 shall expire as provided by the relevant municipal charter or ordinance."[1]
The above provision applies only to municipalities with elections scheduled for March. You have advised this office that the Naples city elections are held in February. Accordingly, the above provision would be inapplicable.
You state, however, the provisions of sections 100.3605 and 166.021, Florida Statutes, may provide the authority for the city to change its election date, and corresponding qualifying date. Section 100.3605(2), Florida Statutes, provides:
"The governing body of a municipality may, by ordinance, change the dates for qualifying and for the election of members of the governing body of the municipality and provide for the orderly transition of office resulting from such date changes."[2]
Section 166.021(4), Florida Statutes, provides in pertinent part:
"[N]othing in this act shall be construed to permit . . . any changes in a special law or municipal charter which affect . . the terms of elected officers and the manner of their election except for the selection of election dates and qualifying periods for candidates and for changes in terms of office necessitated by such changes in election dates. . . ."
The above provisions were added by Chapter 95-178, Laws of Florida. Prior to the amendment, this office had stated that a municipality was not authorized to amend its charter to provide for a change in the date on which municipal elections would be held without approval by the electorate.[3]
In Attorney General Opinion 00-61, this office stated that an examination of the legislative history of the 1995 legislation indicated an intent that municipalities would be authorized to amend their charters to change the election dates and qualifying periods for candidates, including any changes in terms of office necessitated by such amendment, without a referendum.[4] The title for Chapter 95-178, Laws of Florida, states in pertinent part:
"An act relating to municipal elections; amending s. 166.021, F.S.; authorizing amendment of a special law or municipal charter for the purpose of changing election dates and qualifying periods for candidates, including any changes in terms of office necessitated thereby, without referendum; creating s. 100.3605, F.S.; . . . providing for change of qualifying periods and election dates by ordinance and for the orderly transition of office; providing an effective date."[5]
The title reflects an intent of the Legislature to permit municipalities to amend their charter to change the election dates and qualifying periods for candidates, including any changes in terms of office necessitated thereby, without referendum. It is not, however, as clear whether the Legislature contemplated that these statutes would be used by a municipality to amend a municipal charter by ordinance to create varying election dates within the charter. If sections100.3605(2) and 166.021(4), Florida Statutes, already authorize a municipality to adopt such a charter change by ordinance, the amendment to section 101.75(3) by Chapter 07-39, Laws of Florida, would be unnecessary. It is a general rule of statutory construction that provisions enacted by the Legislature must be assumed to have some useful purpose as the Legislature is not presumed to have enacted useless or meaningless legislation.[6]
Notwithstanding, the language in sections 100.3605(2) and 166.021(4), Florida Statutes, is broad and does not expressly prohibit the type of action contemplated by the City of Naples.[7] Normally, when the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.[8] Clearly under the above statutes, the governing body of a municipality could by ordinance change the dates for qualifying and for the election of municipal officers every four years and then subsequently change back the date of municipal elections by ordinance. What the city proposes to do is effectively carry out such changes in a single ordinance.
Rather than require the city to continually amend its charter to permit the election of municipal officers at the same time as a presidential preference primary every four years, I am of the opinion that sections 100.3605(2) and 166.021(4), Florida Statutes, provide sufficient authority to permit the city council, by ordinance, to amend the charter to change the date for the regular municipal election date from the first Tuesday in February of each even numbered year to a date that corresponds with the State of Florida Presidential Primary every four years. Similarly, these statutes in my opinion provide sufficient authority for the city council to amend by ordinance the city charter to provide for a special candidate qualification date in years in which there is a State of Florida Presidential Preference Primary.
Sincerely,
 Bill McCollum Attorney General
BM/tjw
[1] The Florida Senate Professional Staff Analysis and Economic Impact Statement for CS/CS/SB's 960 1010, which contained a similar provision to CS/HB 537, dated April 24, 2007, states that
"The bill also authorizes municipalities, by ordinance, to move municipal elections currently scheduled for March 2008 and thereafter to coincide with the new presidential preference primary date. This should provide some relief for cities with a municipal election date governed by special law or charter provision, that seek to take advantage of the cost savings associated with scheduling the municipal election to coincide with the presidential preference primary."
[2] And see s. 100.3605(1), Fla. Stat., stating that the Florida Election Code, Chapters 97-106, Florida Statutes, govern the conduct of a municipality's election in the absence of an applicable special act, charter, or ordinance provision and that "[n]o charter or ordinance provision shall be adopted which conflicts with or exempts a municipality from any provision in the Florida Election Code that expressly applies to municipalities."
[3] See Op. Att'y Gen. Fla. 94-31 (1994), stating that the City of Tallahassee could not amend its charter by ordinance to provide for a change in the date on which municipal elections will occur and extend the terms of the sitting officers affected by the change. This conclusion was based on the language of section 166.021(4), Florida Statutes (1993), which then provided that nothing in Chapter 166, Florida Statutes, the Municipal Home Rule Powers Act, was to be construed as permitting any changes in a special law or municipal charter that affect certain subject matters set forth therein, including "the terms of elected officers," without referendum approval as provided in section 166.031, Florida Statutes.
[4] See House of Representatives Committee on Ethics and Elections Final Bill Analysis Economic Impact Statement on HB 2209 (passed by the Legislature as Ch. 95-178, Laws of Florida), dated May 10, 1995, stating:
"HB 2209 authorizes amendment of a municipal charter or special act without referendum for the purpose of changing municipal election dates and qualifying period for candidates and for the adjustment of terms of office necessitated by such date changes. . . ."
[5] See, e.g., Parker v. State, 406 So. 2d 1089 (Fla. 1981) (one indicator of legislature's intent is the title of the law enacting the statute); Carlile v. Game and Fresh Water Commission, 354 So. 2d 362,365 (Fla. 1977) (reference to the title of a legislative act is appropriate in determining legislative intent); Long v. State, 622 So. 2d 536 (Fla. 1st DCA 1993); State, Department of EnvironmentalRegulation v. SCM Glidco Organics Corporation, 606 So. 2d 722 (Fla. 1st DCA 1992) (to determine legislative intent, court must consider act as whole, i.e., evil to be corrected, language of act, including its title, history of its enactment, and state of law already in existence).
[6] See, e.g., Smith v. Piezo Technology and ProfessionalAdministrators, 427 So. 2d 182
(Fla. 1983); Arnold v. Shumpert, 217 So. 2d 116 (Fla. 1968);Neu v. Miami Herald Publishing Company, 462 So. 2d 821
(Fla. 1985) (in construing legislation, courts should not assume Legislature acted pointlessly); Sharer v. Hotel Corporation ofAmerica, 144 So. 2d 813 (Fla. 1962) ("[i]t should never be presumed that the legislature intended to enact purposeless and therefore useless, legislation. Legislators are not children who build block playhouses for the purpose, and with the gleeful anticipation, of knocking them down").
[7] See generally In re McCollam, 612 So. 2d 572 (Fla. 1993) (when language of statute is clear and unambiguous and conveys a clear meaning, statute must be given its plain and ordinary meaning); Op. Att'y Gen. Fla. 93-47 (1993) (in construing statute which is clear and unambiguous, the plain meaning of statute must first be considered).
[8] See, e.g., M.W. v. Davis, 756 So. 2d 90 (Fla. 2000) (when language of statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to rules of statutory interpretation and construction as statute must be given its plain and obvious meaning); McLaughlin v. State, 721 So. 2d 1170 (Fla. 1998);Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984); Osborne v. Simpson,114 So. 543 (Fla. 1927) (where statute's language is plain, without ambiguity, it fixes legislative intention and interpretation and construction are not needed).