(No. 34421.—

Martin H. Schreiber, Appellant, *vs.* Illinois Liquor Control Commission *et al.,* Appellees.

*Opinion filed September 20, 1957.*

Thomas A. Matthews, of Chicago, (Byron S. Matthews, of counsel,) for appellant.

Latham Castle, Attorney General, of Springfield, (William C. Wines, Edward M. White, and Raymond S. Sarnow, of counsel,) for the Liquor Control Commis-

sion, and SOL A. HOFFMAN, and LOUIS L. BIRO, both of Chicago, for other appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

Abe Greengard, who proposed to open a restaurant in the village of Barrington, was denied a retail liquor license by the local commissioner on the ground it would exceed the limit of four fixed by a village ordinance as amended in 1935. The village board voted to uphold the action of its commissioner, whereupon Greengard appealed to the State Liquor Control Commission which conducted a hearing *de novo,* (See: Ill. Rev. Stat. 1955, chap. 43, par. 153; *Hornstein* v. *Illinois Liquor Control Com.* 412 Ill. 365,) and, with one member dissenting, overruled the decision of the local official. While not expressly stated in its finding or order, the complete absence from the record of any other ground upon which to base its action causes it to appear that the decision of the Commission resulted from the factual finding that the ordinance relied upon had not gone into effect because the proof failed to show it had been published within one month after it was passed, as required by the Cities and Villages Act of 1872, as amended. (Smith Hurd Stat. 1935, chap. 24, par. 76.) Indeed in this court, counsel for Greengard and the Commission, the appellees, offer only the invalidity of the ordinance as amended in 1935 to sustain the Commission's decision. Upon administrative review, the scope of which extends "to *all questions of law* and of fact presented by the entire record before the court," (Ill. Rev. Stat. 1955, chap. 110, par. 274; emphasis supplied,) the superior court of Cook County affirmed the decision of the Commission. The local commissioner now appeals from such judgment and the reviewing judge has certified both that the validity of a municipal ordinance is involved and that the public interest requires a direct appeal to this court. From such certificate, to-

gether with the affirmance of what is shown in the administrative record, it is to be concluded that the reviewing court determined as a matter of law that the ordinance invoked by the village was invalid.

The record shows that Greengard's appeal to the Commission was heard on June 6, 1955, and the finding and order filed on July 15, 1955. Thereafter the local commissioner applied for a rehearing, (See: Ill. Rev. Stat. 1955, chap. 43, par. 154,) later denied, in which petition it was alleged, among other things, that the village of Barrington had passed a new liquor control ordinance on June 20, 1955, one provision of which again limited the number of retail liquor licenses to four. An attached copy of the ordinance, bearing the seal of the village clerk, reflected its passage by the unanimous vote of the village board and a concluding provision that the ordinance should "be in full force and effect from and after its passage, approval and in ten days from and after the date of its publication according to law." Although counsel for the appellant states in argument that the new ordinance was published after its passage as required by the existing law, (Ill. Rev. Stat. 1955, chap. 24, par. 10—3,) we find no substantiation or certification of such fact in the record.

The authority of the village to pass ordinances limiting the number of liquor licenses it will issue and the constitutionality of such a regulation under the police power is not contested. (See: Ill. Rev. Stat. 1955, chap. 43, par. 110; 48 C.J.S., Intoxicating Liquors, sec. 33; *Henson* v. *City of Chicago*, 415 Ill. 564; *People* v. *Alfano*, 322 Ill. 384.) The present contentions of the parties are, rather, directed largely to evidentiary issues dealing with the manner and burden of proving the publication of a penalty ordinance, and to the question of whether the evidence relating to the amended ordinance of 1935 justified the order of the Commission and the subsequent finding of invalidity by the court. While we are constrained to remark that the limited

scope of the language employed to announce both the administrative decision and the judgment of the court give little assistance in defining such issues, it is our opinion the need to consider them at this time is obviated by the showing in the record that the ordinance of 1935 had been supplanted by a new liquor control ordinance, enacted on June 20, 1955, prior to the administrative decision which forms the basis of the judgment appealed from. The parties themselves have not treated at length on the questions of law presented by such a showing in the record; however, since all questions of law appearing in the administrative record are before us and because of the public interest in the evils which may stem from the uncontrolled traffic in intoxicating liquors, it is both necessary and proper for this court to do so.

The liquor control statute of this State, from which the village derives its authority to adopt licensing measures, provides the following: "A license shall be purely a personal privilege, * * * and shall not constitute property, * * *." (Ill. Rev. Stat. 1955, chap. 43, par. 119.) In appraising this and other statutory regulations in the light of constitutional limitations, this court has held repeatedly the right to engage in liquor traffic is not an inherent right, but is always subject to the control of the State in the legitimate exercise of its police power. (*Hornstein* v. *Illinois Liquor Control Com.* 412 Ill. 365; *O'Connor* v. *Rathje,* 368 Ill. 83; *People ex rel. Fitzgerald* v. *Harrison,* 256 Ill. 102.) More specifically it was said in *Great Atlantic and Pacific Tea Co.* v. *Mayor of Danville,* 367 Ill. 310, 317: "The right to engage in the liquor traffic is not an inalienable right guarded by the organic law. It is not a right of citizenship nor one of the privileges and immunities of citizens of the United States. It involves no constitutional right which is violated by the mere curtailment or termination of its exercise." See also: *Crowley* v. *Christensen,* 137 U.S. 86, 34 L. ed. 620.

A striking example of the application of the foregoing principles is found in *People* v. *Kaelber,* 253 Ill. 552, a decision most persuasive here under its facts. In that case the defendant, on March 31, 1911, was issued a license for one year by the city of Quincy entitling him to operate a dram shop at a location which subsequently proved to be 2500 feet from the Illinois Soldiers' and Sailors' Home. Two months later a statute was enacted and approved making it unlawful to sell intoxicating liquor within two-thirds of a mile of land owned or maintained by the State as a soldiers' and sailors' home. Kaelber was arrested for violating this statute on July 1, 1911, some eight months before his license was due to expire, and when he sought to interpose such license as a defense, the court struck it down saying: "The license granted to the plaintiff in error by the city of Quincy was not a contract. It gave him no vested rights and constituted no defense to the information." (253 Ill. 556.) Again in *People* v. *McBride,* 234 Ill. 146, where the constitutionality of the Local Option Act of 1907 was tested under facts which showed the people of the municipality issuing a license to defendant had voted to abolish the sale of liquor on an effective date prior to the time such license expired, the court said, in reply to a contention that the statute deprived the defendant of his property without due process of law (p. 178) : "Licenses to sell liquor are not contracts and create no vested rights. They are merely temporary permits to do what would otherwise be an offense against the law, * * *."

It follows logically that if the license itself is not a contract and creates no vested interests, an application for a liquor license is likewise ineffective for either purpose and, as is true of a license, that it is subject to all applicable laws of the State and municipality which are or might be in force. Aside from the principles announced and followed in the decisions of this court, support for such a conclusion is found in *Scharff* v. *State of Ohio,* 99 Ohio A. 139, 131

N.E.2d 844, and *Appeal of Spankard,* 138 Pa. Super. 251, 10 A.2d 899. In the first case Scharff filed an application on December 10, 1948, for a permit to sell liquor in a village where one permit had already been granted. His application was denied by the State board on September 9, 1953, on the basis of an executive order of April 11, 1949, which froze the number of liquor permits that would be issued in the State. The court of common pleas affirmed the order of the board, and when Scharff, on further appeal, contended that his application was made before the executive order and that the law in force at the time of his application should govern, the Court of Appeals reasoned that his application created no contract or vested right, and held that the law applicable at the time of passing on the application by proper authorities, rather than the date the application was filed, governed the right to a permit. The record of the instant case reveals that the applicable law of the village of Barrington was changed prior to the time the *de novo* hearing before the State commission had culminated in a decision.

A similar result was reached in the *Spankard case* under circumstances bearing a still greater analogy to those of the case at hand. There the Pennsylvania Liquor Control Board refused the application of Spankard for a restaurant liquor license in the city of Pittsburgh because of his record of arrests, and because he had in fact been the real owner of the premises while prior licenses had been in the name of another. On June 15, 1939 Spankard appealed from such refusal to the court of quarter sessions where a hearing was held on June 28 and the cause dismissed on July 13, 1939. Subsequently the trial judge filed a written opinion indicating his order of dismissal was predicated on a statute which became law on June 24, 1939, while the appeal was pending, whereby the number of liquor licenses to be issued by the board was limited to one for each one thousand inhabitants, a limit already exceeded in the city

of Pittsburgh. Spankard then appealed to the Superior Court of Pennsylvania where the court summarized one issue before it as follows: "Was the dismissal of his appeal by the court, based on the Act of June 24, 1939, P.L. 806, sustainable under said Act, in view of the fact that his application had been filed and refused and his appeal from such refusal had been taken and was pending in court, when the Act was passed and became effective on June 24, 1939?" (10 A.2d at 901.) This inquiry was answered in the affirmative with the pivotal factors being the court's determination that the filing of such an application gives a person no contract or property rights at all and that a liquor license, even when granted, is a privilege only, subject at all times to the control of the legislature. In reply to a contention that the act of June 24, 1939, was being given retroactive effect, the court held the construction employed did no more than what the act expressly provided, *i.e.,* it put the act into immediate effect upon final enactment. The substantive law which led to the result in the *Spankard case* is undistinguishable from the substantive law of this State. We think too such a result is justified in this case under the factual circumstance that Greengard's application had progressed no farther than a hearing *de novo* before the State Commission at the time the village of Barrington passed its new liquor control ordinance.

Based upon the concept that Greengard's application for a license gave him no contract or property rights, and upon recognition of the village's continuing authority to exercise the police power by determining the number of licenses it will permit within its limits, (See: Ill. Rev. Stat. 1955, chap. 43, par. 110,) we are of the opinion the State Commission erred when, despite the *prima facie* showing that the village had passed a new and presumptively valid liquor control ordinance, it refused a rehearing and sustained its decision based upon the amended ordinance of 1935. Accordingly, it is our view that this cause must be returned

to the commission for a reconsideration of Greengard's application in the light of the ordinance of June 20, 1955.

The judgment of the superior court of Cook County is reversed and the cause is remanded to that court, with directions to set aside the administrative order and to remand the cause to the Commission for further proceedings consistent with the views expressed in this opinion.

*Reversed and remanded, with directions.*