VINO FINO LIQUORS, INC., Plaintiff-Appellant, v. THE LICENSE APPEAL COMMISSION OF THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 1—07—3269

Opinion filed September 1, 2009.

Dean T. Maragos, of Maragos & Maragos, Ltd., of Chicago, for appellant.

Mara S. Georges, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and J. Mark Powell, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE THEIS delivered the opinion of the court:

Plaintiff, Vino Fino Liquors, Inc. (Vino Fino), appeals from the order of the circuit court of Cook County denying the complaint for administrative review it filed against defendants (collectively, the City), the License Appeal Commission of the City of Chicago (the LAC); Anthony Calabrese, chairman of the LAC; Irving Koppel, commissioner of the LAC; Don Adams, commissioner of the LAC; Richard M. Daley, mayor of the City of Chicago and local liquor control commissioner for the City of Chicago; and Scott V. Bruner, director of the Local Liquor Control Commission of the City of Chicago (the LLCC). In this appeal, Vino Fino contends that: (1) the City's denial of its application for a packaged goods liquor license was against the manifest weight of the evidence, and (2) in denying its license, the City misapplied section 4—60—040 of the Chicago Municipal Code (Chicago Municipal Code §4—60—040 (amended November 19, 2008)). For the following reasons, we affirm.

In July 2001, Nilsa Gonzalez purchased Paco's Liquors, Inc. (Paco's Liquors), a licensed packaged goods liquor store located at 2558 West Division Street in Chicago. Gonzalez became the president and sole shareholder of Paco's Liquors. In January 2004, the City cited Paco's Liquors for the sale of alcohol to a minor, which resulted in a voluntary seven-day closing of the establishment. Approximately four months later, the City issued a second citation to Paco's Liquors for selling alcohol to a minor.

On July 23, 2004, Gonzalez filed an application for a new packaged goods liquor license for a new corporation, Vino Fino, which was located at the same address where Paco's Liquors was licensed to

operate. Gonzalez was the president and sole shareholder of Vino Fino. After receiving Vino Fino's application, the LLCC notified Gonzalez that the application review period would be extended.

On September 10, 2004, while Paco's Liquors' second citation for sale of alcohol to a minor was pending resolution, the LLCC initiated proceedings to revoke the liquor license of Paco's Liquors. Ten days later, Gonzalez and Paco's Liquors settled that citation for a $2,000 fine, and the LLCC ended the revocation proceedings.

The same day, the LLCC's director, Scott V. Bruner, sent Gonzalez a letter denying Vino Fino's application for a packaged goods liquor license. The letter stated:

> "The application for a packaged goods license is disapproved because the issuance of a liquor license to the applicant will create a law enforcement problem.
>
> The Municipal Code allows this Commission to disapprove a license 'if the issuance of such license would tend to create a law enforcement problem.' The president and 100% shareholder of the Vino Fino Liquors, Inc., Nilsa Gonzalez, is the current president and 100% shareholder of Paco's Liquors, Inc.[,] which is issued a license at this address, 2558 W. Division Street. Ms. Gonzalez and Paco's Liquors[,] Inc.[,] have an established a [sic] negative license history at 2558 W. Division."

The letter further stated, "because Ms. Gonzalez has not prevented the sale of alcohol to minors under Paco's Liquors, Inc., this Commission sees no reason why she would act differently under Vino Fino Liquors, Inc.[,] and will create a law enforcement problem if issued."

Vino Fino then appealed the denial of its application for a packaged goods liquor license to the LAC, which conducted an evidentiary hearing. Richard Haymaker, deputy director of the LLCC, was the City's sole witness. Haymaker testified that he reviewed approximately 10 to 15 liquor license applications per week. The review process included a review of the application file, an investigation into the license history of the individuals applying for the license, and an investigation of the location of the business.

Haymaker further testified that he reviewed Vino Fino's application. During the normal course of review, Haymaker investigated the license history at the establishment's location and investigated whether Gonzalez held any other licenses. He learned that Paco's Liquors received four citations for the sale of alcohol to a minor: one in 1994, one in 1995, and two in 2004. The first two citations were issued while Paco's Liquors was under the control of its previous owner, Nelson Colon, and the latter two were issued during Gonzalez's ownership of Paco's Liquors. The LLCC did not consider the first two cita-

tions in its denial of Vino Fino's application because they occurred before Gonzalez acquired Paco's Liquors.

Haymaker further testified that the LLCC denied Vino Fino's license because an approval of the application would "have allowed an existing licensee escape their license history." Specifically, the issuance of a license to Vino Fino would have impeded the enforcement of section 4—60—181(d) of the Municipal Code of Chicago, which provides for the immediate revocation of a liquor license upon the third sale of alcohol to a minor violation within three years. Chicago Municipal Code §4—60—181(d) (amended October 31, 2007). According to Haymaker, if Gonzalez were issued a packaged goods liquor license for Vino Fino and committed another violation for the sale of alcohol to a minor within three years, the LLCC would be unable to enforce the automatic suspension provision of section 4—60—181(d). Although Haymaker testified that the LLCC could attempt to hold Paco's Liquors' prior license history against Vino Fino in future disciplinary proceedings, he believed that it would be a "very difficult case."

On cross-examination, Haymaker acknowledged that he did not contact Alderman Ocasio, the alderman in whose ward Vino Fino was located, the local police district commander, or any community group before the LLCC denied Vino Fino's application.

After the City rested its case, Vino Fino called 14 witnesses: 2 aldermen, an officer testifying on behalf of the 14th police district, the director of Cook County Commissioner Roberto Maldonado's office, the developer of age-verification software installed at Paco's Liquors, the director of the Division Street Business Development Association, 7 local residents, and Gonzalez.

Gonzalez testified she made several improvements to Paco's Liquors after purchasing the store in 2001. She installed an automated cash register system and also installed several security cameras on the interior and the exterior of the establishment. The cameras have helped deter crime in the area immediately surrounding Paco's Liquors and Vino Fino.

Gonzalez further testified that when she purchased Paco's Liquors, she was not aware of the two violations for sale of alcohol to a minor under its previous owner. She discovered these violations when she appeared before the LLCC in January of 2004. After receiving her second violation for sale of alcohol to a minor, Gonzalez installed an age-verification software system to prevent the future sale of age-restricted items to minors.

During direct examination, Gonzalez was asked if she had decided to create a new corporation and why she had made that decision, to which she replied:

"At that time, yes. I felt that I was in trouble and I needed to have a better way of handling the business because now I didn't know what I was involved with with the prior violations, so I followed the regular—the law, you know, with [my attorney's] advice, and I put in for a new license, and I had to go back to all the community like once again, and the police commissioner, the community members, the alderman, and filled out the applications, got the proper notification, and moved in that way."

On cross-examination, Gonzalez testified that as a result of her second sale of alcohol to a minor violation, she voluntarily closed Paco's Liquors until the age-verification system was installed. However, she denied that her application for a new packaged goods liquor license was an attempt to erase her disciplinary history at Paco's Liquors. Gonzalez admitted that her father had worked at Paco's Liquors for approximately 30 years and that he was responsible for the first sale of alcohol to a minor under her ownership. Gonzalez did not work at Paco's Liquors until she purchased the store in 2001.

Alderman Manuel Flores of the 1st ward and Alderman Billy Ocasio of the 26th ward each testified that Gonzalez had a good reputation and that she was active in the community. Neither alderman believed that the issuance of a new packaged goods liquor license to Gonzalez would have created a law enforcement problem. On cross-examination, Alderman Flores admitted that he was unaware Gonzalez had already been operating a liquor license establishment, but stated that his opinion remained the same.

Officer Anthony Robles, a patrol officer in the Chicago police department, testified on behalf of the 14th police district. As a law enforcement officer, Officer Robles was familiar with the area around 2558 West Division Street. He was not aware of any law enforcement problems associated with the liquor license and believed that the external security cameras on Vino Fino's premises prevented law enforcement problems. On cross-examination, Officer Robles admitted that although he had discussed the license history of the location with Commander Avila, they had only discussed three prior violations for the sale of alcohol to a minor.

Wayne Worthington, an expert in the area of computer technology for age verification and driver's license systems, testified that Vino Fino purchased and installed an age-verification software system he developed. The system required a store clerk to scan a patron's identification or manually enter a birth date before the sale of an age-restricted item, such as alcohol or tobacco, was completed. Worthington opined that the age-verification system materially decreased the possibility of sales of alcohol to minors at Vino Fino. On cross-

examination, Worthington admitted that there was a possibility that the age-verification system could be uninstalled.

Steve Shavers, director for Cook County Commissioner Roberto Maldonado's office, testified that Commissioner Maldonado's office fully supported Vino Fino's packaged goods liquor license. Shavers had never heard of any community or police complaints about Vino Fino and, in his opinion, the issuance of a new packaged goods liquor license to Vino Fino would not create a law enforcement problem.

Enrique Salgado, executive director of the Division Street Business Development Association, testified that Gonzalez had a good reputation in the community and that she was not responsible for any law enforcement problems. He further testified that Vino Fino's use of age-verification technology made it a model business for the community.

Seven local residents, Franciso Saez, Osmar Rodrieguez, Reinaldo Bae, Margaret Howard, Nazario Hernandez, Alex Olivera, and Willie Murry, each testified that Gonzalez had a good reputation in the community and that Vino Fino's external cameras reduced crime in the neighborhood.

At the conclusion of the hearing, the LAC affirmed the LLCC's denial of Vino Fino's packaged goods liquor license. The LAC found that Gonzalez had reincorporated as Vino Fino to "either wipe the slate clean of previous violations and start anew or to avoid responsibility for previous violations." The LAC determined that the issuance of a license to Vino Fino would allow Gonzalez to avoid the responsibility and consequences of her past violations. The LAC explained:

> "To allow licensees to run up a history of violations and then when their prior bad acts have their licenses on the brink of revocation to avoid responsibility for that history and wipe the slate completely clean by changing only the name of the entity that runs the business would not serve the interests of the community. Such a policy could virtually preclude the revocation of any license."

The LAC further found that the LLCC's denial was reasonable and did not constitute an abuse of discretion.

However, one member of the LAC, Commissioner Koppel, filed a dissent, finding that the LLCC's decision to deny Gonzalez a license should be reversed. Commissioner Koppel stated:

> "The Mayor's License Commission has denied this application because under the previous corporation there were two violations for selling liquor to minors. One of these violations took place when the applicant was not involved in the corporation. The second

violation occurred on June 18, 2004 and the applicant had an interest in the corporation."[1]

Commissioner Koppel determined that the testimony in favor of Gonzalez was "impressive" and that Gonzalez's prior history could be taken into account in future disciplinary proceedings.

Vino Fino subsequently filed a petition for rehearing alleging that the LAC's denial of a packaged goods liquor license was in error. The LAC denied the petition.

Vino Fino then sought review in the circuit court of Cook County. The circuit court remanded the cause to the LLCC to reconsider the application relying only on the violations that took place after Gonzalez purchased Paco's Liquors.[2]

The LLCC again denied Vino Fino's application for a packaged goods liquor license because the issuance of a license would create a law enforcement problem. The LLCC explained:

> "Taking these two violations into account, the LLCC has no reason to believe that Gonzalez, who has not prevented the sale of alcohol to minors under Paco's Liquors, Inc., will act differently under Vino Fino Liquors[,] Inc. In addition, since the corporate license applicant is also entirely owned by Nilsa Gonzalez, and in light of her testimony at the hearing before the License Appeal Commission, it is clear that the sole purpose of this application is to attempt to erase her license disciplinary history. The LLCC has determined that allowing a licensee with a track record of violations to shed its disciplinary history undermines the regulatory process, endangers the public, and poses a law enforcement problem."

The LLCC also noted that while this matter was pending on appeal, Paco's Liquors incurred another violation for the sale of alcohol to a minor. The LLCC stated, "[w]hile not considered as a part of Vino Fino's original application for a packaged goods liquor license, this additional violation only solidifies the view that under Gonzalez's ownership the corporation has failed to prevent the sale of alcohol to minors." Thereafter, the circuit court of Cook County affirmed the LLCC's decision, and Vino Fino filed this timely appeal.

---

[1]Contrary to Commissioner Koppel, our review of the record reveals that Paco's Liquors had four violations for selling liquor to minors at the time of the hearing. Two of the violations took place while Gonzalez owned the business, and the other two took place under Paco's Liquors' previous ownership.

[2]The record indicates that both the LLCC and the LAC only considered the two violations that took place after Gonzalez purchased Paco's Liquors when making their initial determinations.

Vino Fino now contends that the LAC's decision to deny its application for a package goods liquor license was against the manifest weight of the evidence. Specifically, Vino Fino claims that there was no evidence to support the LAC's determination that issuance of a license to it would "tend to create a law enforcement problem."

Pursuant to section 7—11 of the Local Liquor Control Act of 1934 (235 ILCS 5/7—11 (West 2006)), decisions of the License Appeal Commission upholding determinations made by the LLCC are subject to judicial review in accordance with the provisions of the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 2006)). See also *Daley v. License Appeal Comm'n*, 311 Ill. App. 3d 194, 199 (1999). In this appeal, we review the administrative agency's decision and not the decision of the circuit court. *Daley v. El Flanboyan Corp.*, 321 Ill. App. 3d 68, 71 (2001).

The standard of review applied on review of an agency's decision depends on whether the issue is one of fact or law. *MJ Ontario, Inc. v. Daley*, 371 Ill. App. 3d 140, 145 (2007). Where the agency's decision involves a pure question of law, our review is *de novo. MJ Ontario*, 371 Ill. App. 3d at 145. In contrast, the agency's findings of fact are presumed to be true and correct and must be affirmed unless they are against the manifest weight of the evidence. *El Flanboyan*, 321 Ill. App. 3d at 71, 746 N.E.2d at 858. A factual finding is against the manifest weight of the evidence only if an opposite conclusion is clearly evident from the record. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). If any evidence supports the agency's decision, that decision should be affirmed. *Abrahamson*, 153 Ill. 2d at 88. The mere fact that a different conclusion is reasonable or that the reviewing court would have ruled differently does not justify reversal. *MJ Ontario*, 371 Ill. App. 3d at 145.

The power to license, regulate, or prohibit liquor sales is a matter of the police powers of the state and, if so delegated, local municipalities. *Henson v. City of Chicago*, 415 Ill. 564, 569 (1953). The purpose behind liquor control in Illinois is to protect the health, safety, and welfare of the citizens of Illinois by fostering temperance in the consumption of alcoholic beverages and by promoting "sound and careful control and regulation of the manufacture, sale and distribution of alcoholic liquors." 235 ILCS 5/1—2 (West 2006). There is no right to sell alcoholic beverages; the privilege of doing so is always subject to governmental control. *Schreiber v. Illinois Liquor Control Comm'n*, 12 Ill. 2d 118, 121 (1957).

The Chicago Municipal Code provides that "[n]o person shall sell at retail any alcoholic liquor without first having obtained a city retailer's license." Chicago Municipal Code §4—60—020(a) (amended

November 13, 2007). To obtain such a license from the City, an applicant must file an application in accordance with the procedures set forth in section 4—60—040 of the Chicago Municipal Code. Chicago Municipal Code §4—60—040 (amended November 19, 2008). If the applicant for a license is a corporate entity, then the application must be signed by a duly authorized agent or manager. Chicago Municipal Code §4—60—040(b) (amended November 19, 2008). The application must also disclose, *inter alia*, the date the entity was organized or incorporated; the name, residence address, date of birth and social security number of any person owning directly or beneficially any percentage of ownership therein, or, in the case of a publicly traded entity, this information for the three parties owning the largest shares in the entity; and the same information for the officers, directors, and managers of the entity. Chicago Municipal Code §4—60—040(b)(1) (amended November 19, 2008).

In addition, the application must contain a statement as to whether the applicant has ever been convicted of, *inter alia*, a violation of the law concerning the manufacture, possession, or sale of alcoholic liquor. Chicago Municipal Code §4—60—040(b)(8) (amended November 19, 2008). The application must also indicate whether the applicant has ever had a license to sell alcohol revoked. Chicago Municipal Code §4—60—040(b)(9) (amended November 19, 2008). Section 4—60—030 provides that the issuance of a license is prohibited when the applicant or a manager, managing member, officer, director, or stockholder owning more than 5% of an entity has been convicted of a felony, convicted of a crime or misdemeanor "opposed to decency and morality," or has had a liquor license revoked for cause. Chicago Municipal Code §4—60—030(g) (amended November 15, 2006).

The LLCC has the discretion to deny an application for a license if the issuance of a license to the applicant would "tend to create a law enforcement problem." Chicago Municipal Code §4—60—040(h) (amended November 19, 2008); see also *MJ Ontario*, 371 Ill. App. 3d at 145. The ordinance does not define what is meant by the phrase "tend to create a law enforcement problem," nor have we found any prior judicial decisions discussing the phrase.

In interpreting the meaning of this phrase, we must ascertain and give effect to the intent of the legislative body that enacted it, which is the city council in this case. See, *e.g.*, *Amigo's Inn, Inc. v. License Appeal Comm'n*, 354 Ill. App. 3d 959, 965 (2004). We should consider the ordinance in its entirety, keeping in mind the subject it addresses and the city council's apparent objective in enacting it. *Amigo's Inn*, 354 Ill. App. 3d at 965. Further, although we are not formally bound by an administrative agency's interpretation of statutory language, we will

give the administrative agency's interpretation great weight in conducting our own statutory interpretation. *Cojeunaze Nursing Center v. Lumpkin*, 260 Ill. App. 3d 1024, 1029 (1994). This is because the administrative agency has specialized experience and expertise in the subject matter. *Lumpkin*, 260 Ill. App. 3d at 1029.

Examination of the broader context and scheme of this portion of the ordinance discloses that the City's intent is to prohibit the issuance of a license to individuals and entities controlled or owned by individuals who have a prior history of disobeying liquor laws and the law in general. The ordinance requires the applicant to disclose all of this information so that the LLCC can examine the relevant individuals' history to make this determination. The purpose of these measures is to promote the City's goal of protecting the public health and safety. See 235 ILCS 5/1—2 (West 2006). Thus, to deny a license to an applicant who would "tend to create a law enforcement problem" is to deny a license to an applicant who would not obey liquor control laws and the law generally or who would impede enforcement of those laws.

Here, Gonzalez, who was the 100% shareholder and manager of Vino Fino, had a prior history of selling alcohol to minors during her ownership of Paco's Liquors. Gonzalez's own father was responsible for at least one of those violations, and he continued to be employed by Gonzalez.

Sale of alcohol to minors is a violation that is directly related to the control of liquor. See *Wilde-Hammar, Inc. v. Connor*, 216 Ill. App. 3d 660, 667 (1991). Sale of alcohol to minors is a Class A misdemeanor under state law (235 ILCS 5/6—16 (West 2006)), and is also prohibited by section 4—60—140(a) of the Chicago Municipal Code, under which it is grounds for the suspension of the licensee's liquor license. Chicago Municipal Code §4—60—140(a) (amended July 9, 2008); see also *Benchwarmer's, Inc. v. Daley*, 294 Ill. App. 3d 385 (1997). The Chicago Municipal Code further provides that if a licensee is disciplined three or more times for sale of alcohol to minors within a period of three years, the licensee's license shall be immediately revoked. Chicago Municipal Code §4—60—181(d) (amended October 31, 2007).

Based on the evidence presented, the LAC concluded that Gonzalez had sold alcohol to minors in the past and it had no reason to believe that she "will act differently under Vino Fino Liquors." The LAC further found that Gonzalez's attempt to reincorporate and relicense under a new corporation was a further attempt to evade the liquor control laws and the punitive measures in place for violations thereof. Although Gonzalez presented evidence that she was respected in the community and that she had installed age-verification software,

the LAC was not required to resolve this conflict in the evidence in Gonzalez's favor, and we will not second-guess its determination here. See *MJ Ontario*, 371 Ill. App. 3d at 145. Gonzalez's prior history of disobeying the liquor laws was sufficient evidence to deny Vino Fino a license on the grounds that it would "tend to create a law enforcement problem." Therefore, we cannot say that the LAC's decision to deny Vino Fino a license was against the manifest weight of the evidence.

In reaching this conclusion, we find *McCray v. Daley*, 133 Ill. App. 2d 67 (1971), and *Shoot v. Illinois Liquor Control Comm'n*, 30 Ill. 2d 570 (1964), to be distinguishable from the present case. In *McCray*, the applicants had no prior history of criminal or liquor law infractions. *McCray*, 133 Ill. App. 2d at 68 (McCray had no police record other than a traffic violation and his partner, White, specifically distinguished himself from a cousin with a criminal record). In *Shoot*, the court ruled that a law automatically suspending liquor licenses where establishments also purchased gaming device stamps was invalid where it was applied to a licensee who owned pinball machines, rather than gambling machines. *Shoot*, 30 Ill. 2d at 576 (there was no evidence of gambling on the licensee's premises). Here, in contrast there was evidence that Gonzalez had a prior history of violating the liquor laws.

Vino Fino also contends that the LLCC misapplied section 4—60—040 of the Chicago Municipal Code (Chicago Municipal Code §4—60—040 (amended November 19, 2008)) when it denied its application for a license. To that end, Vino Fino asserts that the LLCC did not consider the sentiments of the members of the local community, as presented via testimony from the aldermen's offices, police department, and area residents, before denying the license, which it was required to do. We disagree.

As we explained above, the LLCC had the discretion to deny Vino Fino a license if it found that issuance of a license to Vino Fino would "tend to create a law enforcement problem." Chicago Municipal Code §4—60—040(h) (amended November 19, 2008). The LLCC and LAC so found, and we did not find its decision to have been against the manifest weight of the evidence. Further, the record shows that the LAC did consider the testimony presented by members of the community at the hearing. The ordinance only required the LLCC and LAC to *review* the application and to *consider* this evidence; it did not require the LLCC to simply issue a license to Vino Fino upon presentation of that evidence. See Chicago Municipal Code §4—60—040(h) (amended November 19, 2008); *MJ Ontario*, 371 Ill. App. 3d at 145 (explaining that the LLCC has discretion to deny licenses). The deci-

sion to grant or deny the license was for the LLCC and LAC to make (see, *e.g.*, *Ace Produce, Inc. v. Illinois Liquor Control Comm'n*, 93 Ill. App. 3d 381, 384-85 (1981) (the licensing commission has broad discretion to deny a liquor license to protect the public health, safety, and morals)), and the LAC did not believe that the favorable testimony from members of the community outweighed Gonzalez's prior history of violations for selling alcohol to minors. We cannot say that its conclusion was against the manifest weight of the evidence.

For these reasons, we affirm the judgment of the circuit court denying Vino Fino's complaint for administrative review.

Affirmed.

MURPHY, P.J., and QUINN, J., concur.