2015 IL App (1st) 133449

No. 1-13-3449

SIXTH DIVISION
March 31, 2015

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| MOVE N PICK CONVENIENCE, INC., d/b/a Red Apple Convenience, an Illinois Corporation, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 13 CH 1795 |
| RAHM EMANUEL, as Mayor of the City of Chicago and Local Liquor Control Commissioner, LOCAL LIQUOR CONTROL COMMISSION OF THE CITY OF CHICAGO, MAYOR'S LICENSE COMMISSION OF THE CITY OF CHICAGO, GREGORY STEADMAN, as Commissioner of the Local Liquor Control Commission of the City of Chicago, and the CITY OF CHICAGO, a Municipal Corporation, | ) ) ) ) ) ) ) ) ) | |
| | ) | The Honorable |
| | ) | Kathleen M. Pantle, |
| Defendants-Appellants. | ) | Judge Presiding. |

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Presiding Justice Hoffman and Justice Hall concurred in the judgment and opinion.

**OPINION**

¶1      Defendants, Rahm Emanuel, as the mayor of the City of Chicago and the local

liquor control commissioner, the Local Liquor Control Commission of the City of

Chicago, the Mayor's License Commission of the City of Chicago, Gregory Steadman, as

the commissioner of the Local Liquor Control Commission of the City of Chicago, and

the City of Chicago (the City), a municipal corporation, appeal the order of the circuit court reversing the License Appeal Commission's finding which upheld the Local Liquor Control Commission's denial of the application for a liquor license by plaintiff, Move N Pick Convenience, Inc., d/b/a Red Apple Convenience, an Illinois corporation, on the basis that a liquor license at the desired location would "tend to create a law enforcement problem." Defendants contend the License Appeal Commission (Appeal Commission) properly upheld the denial of the liquor license application by the Local Liquor Control Commission (Local Commission) where the unrebutted evidence demonstrated that issuing a liquor license for plaintiff's desired location would "tend to create a law enforcement problem" in the form of increased crime and the associated strain on limited police resources. Based on the following, we reverse the circuit court and affirm the decisions of the Local Commission and the Appeal Commission.

¶2                                    FACTS

¶3      In early 2012, Move N Pick, which operated the Red Apple Convenience store located at 2000 West Chicago Avenue in Chicago, Illinois, applied for a packaged goods liquor license. The Local Commission and various other City departments reviewed the application. The background investigation revealed no criminal incidents or history of disobeying liquor laws or other laws by plaintiff. Notwithstanding, in a letter dated May 3, 2012, Steadman, as the Commissioner for the Local Commission, denied plaintiff's application pursuant to section 4-60-040(h) of the Chicago Municipal Code (Municipal Code) (Chicago Municipal Code § 4-60-040(h) (amended Nov. 16, 2011)), finding the license would "tend to create a law enforcement problem." The letter advised plaintiff that the 13th District commander of the Chicago police department, later identified as

2

Frank Gross, opined "the issuance of a merchant selling packaged goods in this area will increase the calls for service and criminal activity[,] *** includ[ing] loitering, drinking on the public way, verbal and physical disputes from the misuses of alcohol and violence resulting from these disputes." Police Commander Gross cited 139 arrests in the vicinity of the Red Apple Convenience store and 68 calls for service. In addition, the letter advised plaintiff that the alderman of the 32nd ward stood with the residents of the ward and supported the opposition of a liquor license being issued at the subject location. Plaintiff appealed the Local Commission's decision.

¶4       On August 15, 2012, a hearing was held before the Appeal Commission. Police Commander Gross testified to the same information listed in the May 3, 2012, letter in support of the denial of the application. In addition, Police Commander Gross testified regarding the statistics of crime incidents and "violence and gang-related" incidents within a "few blocks" of plaintiff's business: 121 and 22, respectively, between March 13, 2010, and December 31, 2010; 140 and 41, respectively, between January 1, 2011, and December 31, 2011; and 19 and 5, respectively, between January 1, 2012, and March 12, 2012. The crime incidents included shoplifting from the nearby grocery store, thefts, assaults, criminal sexual assaults, and gang disturbances. According to Police Commander Gross, crime incidents included calls for service, arrests, 911 calls, and any stops made by police officers on the street. Police Commander Gross stated "every time you make an arrest, you've got to go to the location, you have got to make the physical arrest, you have got to bring them to the district, and then you have to start the processing." Police Commander Gross explained that "the 13th district does not have a lock up, so we process the prisoners in the station, then we in turn have to transport those

3

prisoners after we're done with all the paperwork to the holding facility, which presently is in the 18th[1] District, the near north station at Laramie and Division, so it could take four hours plus."

¶5 Police Commander Gross admitted that a "substantial portion of the arrests and incidents in this area" were because of shoplifting. The reports did not specify which crime incidents involved alcohol. Police Commander Gross noted that he had observed an increase in late-night robberies "right in that general vicinity there." Police Commander Gross added that a street gang, the Insane Disciples, was a "huge problem" in the area adjacent to plaintiff's business. He concluded that "in my years, my 26 years, I know that calls for service related to liquor are substantial, and my concern is that if we allow liquor to be sold there that I have *** increased calls for service, and tie up officers when I'd rather have them working on robberies and gang conditions."

¶6 A number of local residents testified at the hearing in support of the denial of plaintiff's liquor license application, citing past crime associated with stores that sold liquor in the neighborhood. The local residents specifically voiced concerns regarding safety of the surrounding neighborhood, decreased property value, public drinking and intoxication, public urination, loitering, litter, noise, and increased traffic. In response to one of the local resident's testimony, plaintiff's attorney noted that her comments addressed "the deleterious impact on the community *** which is a different story." The Appeal Commission Chairman responded:

"There's an aspect of deleterious impact that can be argued under a

law enforcement basis as well.

---

[1] The station designation was unreadable in the transcript from the proceedings. We relied on the Appeal Commission's written order to provide the information.

*** 

I understand the city's position relative to it, but what I'm saying is they're not necessarily separate and apart.

The city – and understand, [l]adies and [g]entlemen, what we're talking about here is the denial – *** denial under the Municipal Code can be for various reasons, one reason which was not alleged in this case, would be that the issuance of this license would cause a – would tend to cause a deleterious impact to the health, safety, and welfare of the community. That has not been alleged. Deleterious impact in and of itself is not a basis that this Commission can look at, because it wasn't charged. It's purely whether it would tend to create a law enforcement problem.

However, within deleterious impact you can have a law enforcement problem, because it doesn't necessarily require that there be felonies, so many felonies and things of that nature, and law enforcement problems can be – littering can be a quality of life issue, if you will.

*** 

And, for that purpose, the testimony I think it's relevant on those grounds, but you are correct. This Commission could not turn around and say the city didn't meet its burden on law enforcement but met its burden on deleterious impact. We can't do it in this case."

¶7 Irar Sweiss, the owner of Move N Pick, testified that his liquor license for another store located on the south side of Chicago had never been suspended or revoked. Sweiss began operating the store in 1985. Sweiss additionally owned a gas station two blocks

from the challenged location and had not been subject to calls for police-related services since opening it in 2003. Sweiss further testified that, if the liquor license were granted, plaintiff would not sell "certain types of liquors that attract people prone to violence," including malt liquors, highly fortified wines, and high-gravity beer.

¶8 On December 5, 2012, the Appeal Commission entered its written order affirming the Local Commission's denial of plaintiff's application. In its written order, the Appeal Commission recognized that, pursuant to *Vino Fino Liquors, Inc. v. License Appeal Comm'n of the City of Chicago*, 394 Ill. App. 3d 516 (2009), plaintiff had no history of violating liquor laws or the law in general that would "tend to create a law enforcement problem." Accordingly, the Appeal Commission concluded that the "theory" advanced in *Vino Fino Liquors, Inc.* did not apply. The Appeal Commission noted that *MJ Ontario, Inc. v. Daley*, 371 Ill. App. 3d 140 (2007), provided a "different theory" of law enforcement problems where the license was not denied based on the particular applicant, but instead because issuance of the license "would aggravate the existing conditions that were already causing quality of life issues that cause law enforcement problems." The Appeal Commission concluded that the City met its "burden of proof" for denying the application. The Appeal Commission found Police Commander Gross's unrebutted testimony regarding the local criminal activity, including the increase in gang activity in the last year, and his opinion that issuance of the license would tend to create a law enforcement problem to be dispositive. Plaintiff sought administrative review of the Appeal Commission's order before the circuit court.

¶9 On October 14, 2013, the circuit court reversed the Appeal Commission's December 5, 2012, order, finding the Appeal Commission's decision was contrary to the

established precedent provided by *Vino Fino Liquors, Inc.* and improperly based on *MJ Ontario, Inc.* where the former provided the applicable law for denial of a liquor license based on a "law enforcement problem" and the latter represented the statutory basis of "deleterious impact." The circuit court concluded that, because plaintiff had no prior history of disobeying the liquor laws or the law in general, the standard for a "law enforcement problem," as provided by the plain language of the ordinance and the binding precedent of *Vino Fino Liquors, Inc.*, had not been established as grounds for denial of plaintiff's application.

¶ 10    This appeal followed.

¶ 11                              ANALYSIS

¶ 12    Defendants contend this court should uphold the finding of the Appeal Commission where the unrebutted evidence demonstrated that granting a liquor license to plaintiff would lead to increased criminal activity, resulting in an increased burden on the police force already tasked with a local gang problem. According to defendants, increased criminal activity and the associated strain on limited police resources demonstrated a tendency "to create a law enforcement problem" and an appropriate basis for denial of plaintiff's application, as provided by the relevant ordinance.

¶ 13    Plaintiff responds that *Vino Fino Liquors, Inc.* provides the relevant inquiry for denial of a liquor application based on tending "to create a law enforcement problem," such that there must be a demonstrated prior history of disobeying liquor laws or the law in general. Because it was undisputed that plaintiff had no history of disobeying liquor laws or the law in general, plaintiff contends its application was improperly denied based upon a tendency "to create a law enforcement problem."

¶14   On appeal, this court reviews the decision of the administrative agency and not the circuit court. *Bailey v. Illinois Liquor Control Comm'n*, 405 Ill. App. 3d 550, 553 (2010). The applicable standard of review is dependent on the question presented on appeal. *Id*. If the question is one of fact, the factual findings of an administrative agency are considered *prima facie* true and correct, and a reviewing court will reverse only if the agency's decision is against the manifest weight of the evidence. *Id*. A factual finding is against the manifest weight of the evidence only if an opposite conclusion is clearly apparent from the record. *Vino Fino Liquors, Inc.*, 394 Ill. App. 3d at 523. If the question is one of law, this court exercises an independent review of the agency's conclusions of law, resulting in *de novo* review. *Bailey,* 405 Ill. App. 3d at 553. If the question presented is mixed, the applicable standard of review is clearly erroneous. *Id*. at 553-54. A decision is clearly erroneous only where, after considering the entire record, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Id*. at 554.

¶15   "Interpretation of a statute is a question of law; in cases involving an agency's interpretation of a statute which the agency is charged with administering, the agency's interpretation is considered relevant but not binding on the court." *Branson v. Department of Revenue*, 168 Ill. 2d 247, 254 (1995). However, we will not substitute our interpretation of a statute for a reasonable interpretation adopted by the agency charged with that statute's administration. *Sloper v. City of Chicago, Department of Administrative Hearings*, 2014 IL App (1st) 140712, ¶ 15.

¶16   Local municipalities have the power to license, regulate, or prohibit liquor sales pursuant to the delegated police powers of the state. *Vino Fino Liquors, Inc.,* 394 Ill.

App. 3d at 523. The Liquor Control Act of 1934 provides that its purpose is to protect the health, safety, and welfare of the people of the State of Illinois and to foster and promote "temperance in the consumption of alcoholic liquors *** by sound and careful control and regulation of the manufacture, sale and distribution of alcoholic liquors." 235 ILCS 5/1-2 (West 2012). In that vein, the Municipal Code prohibits the sale of liquor in a retail establishment without first having obtained a license to do so. Chicago Municipal Code § 4-60-020(a) (amended Nov. 13, 2007). In order to obtain a license, an application must be filed in accordance with the procedures set forth in section 4-60-040 of the Municipal Code. Chicago Municipal Code § 4-60-040 (amended Nov. 16, 2011). Section 4-60-040(h) of the Municipal Code, in relevant part, provides:

"The local liquor control commissioner shall review the application materials and any written objections to the granting of the license. *** The local liquor control commissioner shall deny an application if the applicant fails to satisfy the requirements of this chapter, and may deny an application for a city liquor dealer's license if the issuance of such license would tend to create a law enforcement problem, result in or add to an undue concentration of licenses, or have a deleterious impact on the health, safety or welfare of the community in which the licensed premises is to be located. A deleterious impact is presumed to exist whenever there have been a substantial number of arrests within 500 feet of the applicant's premises (measured from the nearest exterior wall of the premises) within the previous two years, unless the applicant has adopted a plan of operation that will provide reasonable assurance that the issuance of the

license will not have a deleterious impact."  Chicago Municipal Code § 4-60-040(h) (amended Nov. 16, 2011).

"Deleterious impact" is defined in the ordinance as "an adverse effect on the value of any property, an increased risk of violations of law, or a risk of a substantial increase in noise, litter, or vehicular congestion."  Chicago Municipal Code § 4-60-010 (amended Nov. 19, 2008).  The ordinance does not define the phrase "tend to create a law enforcement problem."  See *Vino Fino Liquors, Inc.*, 394 Ill. App. 3d at 524.

¶17     The primary rule of statutory construction is to ascertain and give effect to the intent of the drafters by giving the language its plain and ordinary meaning.  *Sloper*, 2014 IL App (1st) 140712, ¶ 16; *Williams v. Board of Review*, 395 Ill. App. 3d 337, 340 (2009).  This court will apply the ordinance as written where the language is clear and unambiguous without reading in unexpressed exceptions, limitations, or conditions.  *Sloper*, 2014 IL App (1st) 140712, ¶ 16.  "To determine the legislature's intent, the court may properly consider not just the statute's language, but also the purpose and necessity for the law, the evils sought to be remedied, and the goals to be achieved. [Citation.]  The intent of the legislature 'can be ascertained from a consideration of the entire Act, its nature, its object and the consequences that would result from construing it one way or the other.' [Citation.]"  [Internal quotation marks omitted.]  *Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 2011 IL 111611, ¶ 45.  The Chicago Municipal Code provides that "[a]ll general provisions, terms, phrases and expressions contained in this Code shall be liberally construed in order that the true intent and meaning of the city council may be fully carried out."  Chicago Municipal Code § 1-4-190 (added June 27, 1990).

¶18     The parties agree that the basis for rejecting plaintiff's application was because awarding the requested license at the desired location would "tend to create a law enforcement problem."  As stated, the ordinance does not expressly define "tend to create a law enforcement problem."  See Chicago Municipal Code § 4-60-040(h) (amended Nov. 16, 2011).  In *Vino Fino Liquors, Inc.*, this court interpreted the phrase "tend to create a law enforcement problem" as an issue of first impression.  *Vino Fino Liquors, Inc.*, 394 Ill. App. 3d at 524.  Applying the familiar principles of statutory interpretation, this court examined "the broader context and scheme of this portion of the ordinance," which demonstrated the City's "intent is to prohibit the issuance of a license to individuals and entities controlled or owned by individuals who have a prior history of disobeying liquor laws and the law in general."  *Id*. at 524-25.  This court found support in the purpose of the ordinance, namely, to promote the City's goal of protecting the health and safety of the public (235 ILCS 5/1-2 (West 2006)), and the requirement that an applicant disclose all information regarding a prior history of disobeying liquor laws and the law in general.  *Vino Fino Liquors, Inc.*, 394 Ill. App. 3d at 525.  This court concluded that "to deny a license to an applicant who would 'tend to create a law enforcement problem' is to deny a license to an applicant who would not obey liquor control laws and the law generally or who would impede enforcement of those laws."  *Id*.

¶19     Our research has not uncovered any other judicial decisions interpreting the phrase "tend to create a law enforcement problem."  We, however, conclude that *Vino Fino Liquors, Inc.* does not restrict the ability to deny a liquor license application based on a tendency to "create a law enforcement problem" only to those applicants with a prior history of disobeying liquor laws or the law in general.  Rather, a close reading of *Vino*

*Fino Liquors, Inc.* demonstrates that the commonsense definition of "tend to create a law enforcement problem" was expanded in order to encompass the applicant in that case where the denial of the plaintiff's application did not fit neatly into any of the bases provided by the ordinance. The applicant in *Vino Fino Liquors, Inc.* had attempted to circumvent and frustrate the intent of the ordinance by applying for a new license under a new name at the same location after having received two citations for the sale of alcohol to a minor. The Local Commission denied the license because granting the license would have allowed the applicant to escape her license history and prevented the enforcement of a section of the Municipal Code that provided for the immediate revocation of a liquor license upon the third sale of alcohol to a minor within three years. *Id*. at 519. By concluding that an applicant who would not obey liquor control laws or the law generally would "impede enforcement of those laws," this court liberally construed the ordinance to find that the issuance of a liquor license to that applicant would " 'tend to create a law enforcement problem.' " *Id*. at 525. This court, however, did not state anywhere within its opinion that the applicant's history was the *only* factor to consider when assessing whether the issuance of a liquor license would "tend to create a law enforcement problem." Rather, *Vino Fino Liquors, Inc.* applied the facts of the case before it to the ordinance in question. See *Condon v. American Telephone & Telegraph Co*., 136 Ill. 2d 95, 99 (1990) ("[c]ourts of review will *** ordinarily not consider issues that are not essential to the disposition of the causes before them").

¶20 In contrast to *Vino Fino Liquors, Inc.*, the applicant in this case unquestionably had no history of violating liquor control laws or the law in general. Plaintiff's application was not denied on that basis. On the contrary, plaintiff's application was

12

denied purely based on the location of the requested liquor license. The unrebutted evidence presented by Police Commander Gross demonstrated that the area in question was subject to increased criminal and gang activity, noting the Insane Disciples street gang was a "huge problem" in the neighborhood. Police Commander Gross opined that a license at the requested location would lead to increased calls related to liquor, which would place a strain on police resources and the officers' ability to address the already existing crime incidents, such as shoplifting, thefts, assaults, criminal sexual assaults, and gang disturbances. Notably, Police Commander Gross testified that calls leading to arrests would cause officers to be tied up for four hours or more due to limited local police resources. These factual findings relied upon by the Local Commission and the Appeal Commission are *prima facie* true and correct. See *Bailey*, 405 Ill. App. 3d at 553.

¶21    Applying a liberal construction to the ordinance, as we must, we conclude that the plain and ordinary use of the phrase "tend to create a law enforcement problem" supports the denial of plaintiff's application for a packaged goods liquor license at the desired location. Based on the unrebutted testimony presented to the Appeal Commission, providing a liquor license to plaintiff at the desired location would have a tendency to cause local law enforcement to devote attention and limited resources to calls related to the establishment in an area that already demonstrated a demand for the officers' time and attention for other crimes.

¶22    We recognize that the circuit court found the rejection of an application based on the tendency "to create a law enforcement problem" was limited to the definition provided in *Vino Fino Liquors, Inc.* As stated, however, it is our duty to review the findings of the administrative agency, not the circuit court. See *Bailey*, 405 Ill. App. 3d

at 553. Simply stated, it was the Local Commission's and Appeal Commission's decision whether to grant or deny plaintiff's application. *Vino Fino Liquors, Inc.*, 394 Ill. App. 3d at 526-27 (citing *Ace Produce, Inc. v. Illinois Liquor Control Comm'n*, 93 Ill. App. 3d 381, 384-85 (1981)). The Local Commission and Appeal Commission were charged with the interpretation of the ordinance in question and we find their interpretation was reasonable in this case. See *Sloper*, 2014 IL App (1st) 140712, ¶ 15.

¶23 We recognize that, in its written decision, the Appeal Commission stated the court in *MJ Ontario, Inc.* denied an application because it would "tend to create a law enforcement problem" where issuance of the license would "aggravate existing conditions that were already causing qualify of life issues that cause law enforcement problems." *MJ Ontario, Inc.*, however, was a case that involved the denial of a liquor license application because of the "deleterious impact" the license would have on the health, safety, or welfare of the community. *MJ Ontario, Inc.*, 371 Ill. App. 3d at 145-47. "Deleterious impact" was not presented as a basis for the denial of plaintiff's application in this case. Notwithstanding, nothing in the Appeal Commission's written decision demonstrates that it improperly relied on *MJ Ontario, Inc.*

¶24 We further recognize that, at the hearing before the Appeal Commission, the Chairman stated: "Deleterious impact in and of itself is not a basis that this Commission can look at, because it wasn't charged. It's purely whether it would tend to create a law enforcement problem. *** [But] within deleterious impact you can have a law enforcement problem." The language of the ordinance provides that "deleterious impact is presumed to exist whenever there have been a substantial number of arrests within 500 feet of the applicant's premises (measured from the nearest exterior wall of the premises)

14

within the previous two years." Chicago Municipal Code § 4-60-040(h) (amended Nov. 16, 2011). Moreover, in section 4-60-010, "deleterious impact" is defined as "an adverse effect on the value of any property, an increased risk of violations of law, or a risk of a substantial increase in noise, litter, or vehicular congestion." Chicago Municipal Code § 4-60-010 (amended Nov. 19, 2008). There is no question that the decision whether a liquor license will have a deleterious impact on the health, safety, and welfare of the surrounding community takes into account the existing safety of the community. However, consideration of the existing safety of the community is not a mutually exclusive factor relevant only to the denial of an application based on deleterious impact. Instead, the existing safety of the community in terms of established crime and gang activity necessarily implicates law enforcement and evidence that the introduction of an establishment which sells packaged liquor would tend to increase the incidence of crime, placing a strain on the already limited resources of the local police, also demonstrates a tendency to create a law enforcement problem.

¶25 In sum, we conclude that the denial of plaintiff's application for a packaged goods liquor license on the basis that awarding the license would "tend to create a law enforcement problem" was proper in this case where the unrebutted evidence demonstrated the likelihood of increased demand for police services to the establishment in a crime-infested area that already had limited law enforcement resources.

¶26                                CONCLUSION

¶27 Based on the foregoing, we reverse the circuit court's judgment reversing the denial of plaintiff's application for a liquor license. We, therefore, affirm the decisions of the Local Commission and the Appeal Commission.

¶28     Reversed.

MOVE N PICK CONVENIENCE, INC., d/b/a Red Apple Convenience, an Illinois Corporation,

Plaintiff-Appellee,

v.

RAHM EMANUEL, as Mayor of the City of Chicago and Local Liquor Control Commissioner, LOCAL LIQUOR CONTROL COMMISSION OF THE CITY OF CHICAGO, MAYOR'S LICENSE COMMISSION OF THE CITY OF CHICAGO, GREGORY STEADMAN, as Commissioner of the Local Liquor Control Commission of the City of Chicago, and the CITY OF CHICAGO, a Municipal Corporation,

Defendants-Appellants.

No. 1-13-3449

Appellate Court of Illinois
First District, SIXTH DIVISION

March 31, 2015

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.

Presiding Justice Hoffman and Justice Hall concurred in the judgment and opinion.

Appeal from the Circuit Court of Cook County.
The Hon. Kathleen M. Pantle, Judge Presiding.

**COUNSEL FOR DEFENDANTS-APPELLANTS**
Stephen R. Patton, Corporation Counsel of the City of Chicago, Chicago, IL 60602
OF COUNSEL: Benna Ruth Solomon, Deputy Corporation Counsel,
Myriam Zreczny Kasper, Chief Assistant Corporation Counsel
and David H. Decelles, Assistant Corporation Counsel

**COUNSEL FOR PLAINTIFF-APPELLEE**
Webster Powell, P.C., Chicago, IL 60602
OF COUNSEL: Harlan C. Powell